## BLAIR *v.* CUMING COUNTY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF NEBRASKA.

Argued April 8th, 1884.—Decided April 21st, 1884.

*Internal Improvements—Municipal Bonds.*

Bonds issued by the county commissioners of a county in Nebraska, on be-
half of a precinct in that county, to aid a company in improving the water-
power of a river for the purpose of propelling public grist-mills, are issued
to aid in constructing a "work of internal improvement," within the mean-
ing of the act of Nebraska, of February 15th, 1869, as amended by the act
of March 3d, 1870, Laws of 1869, p. 92; and Laws of 1870, p. 15; and
Gen. Stat. of 1873, ch. 35, p. 448.

Although, in such a bond and its coupons, the precinct is the promisor, a suit
to recover on such coupons is properly brought against the county.

Where such bonds purport, on their face, to be issued by the board of county
commissioners, on behalf of the precinct, and are signed by the chairman
of the board, and attested by its clerk, who is also the clerk of the county,
and are sealed with the seal of the county, and the coupons are signed
by such clerk, and the bonds refer to the coupons as annexed, the bonds
and coupons are issued by the county commissioners.

This was an action brought in the Circuit Court of the
United States for the District of Nebraska, by the plaintiff in
error against the county of Cuming, a body corporate of the
State of Nebraska, to recover the money due on coupons cut
from certain bonds. The case was tried on a petition and a
demurrer thereto, the latter alleging, as cause of demurrer, that
the petition did not state facts sufficient to constitute a cause
of action.

By an act of the legislature of Nebraska, which was passed
and took effect February 15th, 1869, entitled "An Act to
enable counties, cities and precincts to borrow money on their
bonds, or to issue bonds to aid in the construction or comple-
tion of works of internal improvement in this State, and to
legalize bonds already issued for such purpose," as amended
by an act passed March 3d, 1870, Laws of 1869, p. 92; and
Laws of 1870, p. 15; and Gen. Stat. of 1873, chap. 35, p. 448,
it was provided as follows:

"Section 1. That any county or city in the State of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county commissioners of such county or the city council of such city, not exceeding ten per cent. of the assessed valuation of all taxable property in said county or city : *Provided*, the county commissioners, or city council, shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, in the manner provided by chapter nine of the Revised Statutes of the State of Nebraska, for submitting to the people of a county the question of borrowing money."

Section 2 enacted that the proposition of the question must be accompanied by a provision to levy a tax annually for the payment of the interest on the bonds as it should become due, and that an additional amount should be levied and collected to pay the principal of the bonds when it should become due ; section 3, that the proposition should state the rate of interest the bonds should draw, and when the principal and interest should be made payable ; section 4, that if a majority of the votes cast should be in favor of the proposition submitted, the county commissioners or the city council should enter the proposition and result of record, and publish notice of its adoption, and thereupon issue the bonds, which should continue a subsisting debt against the county or city, until they should be paid ; and section 5, that the proper officers of the county or city should cause to be annually levied, collected and paid to the holders of the bonds a special tax on all taxable property in the county or city, sufficient to pay the annual interest, as it should become due, and, when the principal should become due, such officers should in like manner collect an additional amount to pay the same as it should become due. Section 7 was in these words :

" Any precinct in any organized county of this State shall have the privilege of voting to aid works of internal improvement, and be entitled to all the privileges conferred upon counties and cities by the provisions of this act ; and in such cases the precinct

election shall be governed in the same manner as is provided in this act, so far as the same is applicable, and the county commissioners shall issue special bonds for such precinct, and the tax to pay the same shall be levied upon the property within the bounds of such precinct. Such precinct bond shall be the same as other bonds, but shall contain a statement stating the special nature of such bonds."

The petition counted on 188 coupons for $25 each, cut from bonds of the following tenor:

" No. 43.        United States of America.        $500.

Dated July 1st, 1875.

" COUNTY OF CUMING, *State of Nebraska:*

(West Point Precinct Bond.)

"Know all men by these presents, that the West Point Precinct, in the county of Cuming and State of Nebraska, acknowledges itself indebted to the bearer hereof in the sum of five hundred dollars for value received, which said sum the said West Point Precinct promise and agree to pay to the bearer hereof at the National Park Bank, in the city of New York, on the first day of July, anno Domini 1895, and also interest thereon at the rate of ten per cent. per annum semi-annually, on the first days of January and July in each and every year ensuing the date hereof, on presentation of the annexed coupons or interest warrants, as they severally fall due, at the National Park Bank, in the city of New York, in lawful money of the United States.

"This bond is one of a series of sixty bonds of five hundred dollars each, amounting in the aggregate to thirty thousand dollars, issued by the West Point Precinct, of Cuming County, and State of Nebraska, as authorized by a vote of its legal voters, and in accordance with chapter 35 Revised General Statutes, approved February 15th, 1869, and (an) act. setting aside the revenue arising from the taxation of works of internal improvements to pay the bonds issued to construct or complete the same.

" These bonds are issued to aid the West Point Manufacturing Company in improving the water-power of the Elkhorn River for the purpose of propelling public grist-mills, and other works of internal improvement of a public nature, in said West Point Precinct. To secure the payment of the principal and interest of

said bonds, the annual revenue and all the taxable property of said West Point Precinct is pledged.

" In testimony whereof, the board of county commissioners of Cuming County, State of Nebraska, have caused this bond to be signed on behalf of West Point Precinct, in the county of Cuming, and State of Nebraska, by its chairman, attested by its clerk, who has affixed thereto the seal of the said county, at the clerk's office in West Point, in the said county, this first day of July, A. D. 1875.

" Thomas Roeh, *Clerk.*                    C. L. Siecke, *Chairman.*
" (Cuming County seal, Nebraska.) "

Each coupon was in the following form :

" $25.00                                                   $25.00.
" The West Point Precinct, Cuming County, State of Nebraska, will pay the bearer twenty-five dollars, at the National Park Bank, in the city of New York, on the first day of July, 1877, on bond No. 43.

" No. 43.                              Thomas Roeh, *Clerk.*"

The coupons fell due as follows : 16 on July 1st, 1877, 43 on January 1st, 1878, 43 on July 1st, 1878, 43 on January 1st, 1879, and 43 on July 1st, 1879. The petition alleges that on the 1st of September, 1875, the defendant made, executed and delivered the coupons, each of them being signed by the clerk of the county, for semi-annual interest on the bond ; and that the bonds are special bonds of the county, issued by its board of county commissioners, in behalf of West Point Precinct, a voting district within and a part of the county, in accordance with the provisions of chapter 35, General Statutes of Nebraska. It sets out a copy of one of the bonds and copies of five of the coupons. It avers that on the 1st of January, 1876, the plaintiff became the purchaser of all the coupons, in good faith and for a valuable consideration, before they became due and payable ; that the only works of internal improvement of a public nature, for which the bonds were so issued to said company, " were the improvement of the water-power of the said Elkhorn River, for the purpose of propelling public grist-mills " in said precinct in said county ; that the improving of said water-

power for said purpose " would and did render the water-power of said river available and useful for propelling other works of internal improvement of a public nature, which were or thereafter might be constructed and located upon the said river in said precinct ; " that, at the time of the sale and delivery of the bonds to the plaintiff, he had "no notice or knowledge of any other works of internal improvement of a public nature in aid of which the said bonds were so issued, except the said works specially mentioned and described in said bonds, viz., the improvement of the water-power of the Elkhorn River for the purpose of propelling public grist-mills" in said precinct ; that the bonds and their attached coupons were "issued and negotiated by the defendant under and by virtue of a majority vote of the qualified voters of West Point Precinct, a local subdivision of said Cuming County, and in pursuance " of said act of February 15th, 1869 ; and that "the improvement of the water-power of the Elkhorn River, to aid which said bonds were issued and negotiated, consisted in constructing a canal for water-power purposes in said West Point Precinct."

The Circuit Court sustained the demurrer, to which ruling the plaintiff excepted, and, as he refused to amend the petition, the court dismissed the action and entered a judgment for the defendant, for costs, and the plaintiff excepted to the judgment. To review the judgment the plaintiff sued out a writ of error.

*Mr. Walter C. Larned* for plaintiff in error.

*Mr. Uriah Bruner* and *Mr. R. F. Stevenson* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

It is urged against the right of the plaintiff to recover, that in the bonds and coupons the West Point Precinct promises to pay, and so the obligations are not those of the defendant and it cannot be sued on them. This question was decided by this court in *Davenport* v. *County of Dodge*, 105 U. S. 237, in regard to precinct bonds issued under the same statute, and it was held that a suit against the county on coupons cut from

special bonds issued by the county commissioners for the precinct was a proper suit.

It is also contended that the statute (sec. 7) required that precinct bonds should be issued as special county bonds for the precinct, by the county commissioners, and did not authorize the chairman of the board and its clerk to issue the bonds; that the county commissioners could not delegate their authority to sign and issue the bonds to any one else, or to one of their number; and that precinct bonds signed by one of the county commissioners, as chairman, and attested by the clerk of the board, and coupons signed by some one as clerk, have no validity. We see no force in these objections. The bonds bear the seal of the county and purport to be issued by the board of county commissioners, on behalf of the precinct. The bond states that the board, in testimony of the statements in the bond, has caused the bond to be signed on behalf of the precinct, by the chairman of the board, and to be attested by the clerk of the board (who appears, by the petition, to have been the clerk of the county), and that such clerk has affixed thereto the seal of the county. This was a sufficient compliance with the statute. The commissioners, by statute, constituted "a board." That was their official designation, when meeting to perform any duties with which they were charged. Gen. Stat. of 1873, chap. 13, secs. 7, 14, pp. 233, 234. The attestation of the bonds by the signatures of the chairman and the clerk of the board, and the county seal, was proper. It was not necessary that all the commissioners should sign the bonds. What was done was not an issuing of the bonds by the chairman and clerk. The coupons, in the form in which they were issued, annexed to the bond, were adopted as coupons, by the statement in the body of the bond, and the question as to any one of them, when detached, is only one of genuineness and identity. The bonds are special bonds for the precinct, and contain a sufficient statement showing their special nature, that is, that they are special bonds for the precinct.

It is also objected that the bonds state that they are issued under the act of 1869, to aid the company in improving the water-power of the river for the purpose of propelling public

grist-mills "and other works of internal improvement of a public nature" in the precinct; and that the latter part of the statement is indefinite, and the other works to be aided or improved, or propelled, should be described or identified, so that it may be seen they were works of internal improvement, within the statute, and also because the proposition voted on must, in order to be a lawful one, have stated what the specific "other works" were. It is a sufficient answer to this objection to say, that the petition states, and the demurrer admits, that the only work of internal improvement of a public nature for which the bonds were issued to the company, was the improvement of the water-power of the Elkhorn River for the purpose of propelling public grist-mills in the precinct; that the improving of such water-power for that purpose rendered it available and useful for propelling other works of internal improvement of a public nature, which were or thereafter might be constructed and located on that river in that precinct; that the improvement of the water-power of that river, to aid which the bonds were issued and negotiated, consisted in constructing a canal for water-power purposes in the precinct; and that the bonds and their attached coupons were issued and negotiated under and by virtue of a majority vote of the qualified voters of the precinct, and in ·rsuance of the act. Thus, there is a distinct statement as well as an admission, that no work of internal improvement was covered by the vote or the issue of the bonds, other than the one of improving such water-power for the purpose of propelling public grist-mills in the precinct. The statement in the bonds in regard to propelling other works of internal improvement of a public nature in the precinct, is explained by the allegation in the petition that the improving of the water-power for the purpose stated rendered it available to propel other works of internal improvement of a public nature, then existing, or which might be constructed on the river within the bounds of the precinct. But this was an incidental result, and aside from the only work in aid of which, or purpose for which, the bonds were issued, as existing, or as notified to, or known by, the plaintiff, at the time of the sale and delivery of the bonds to him.

It is also objected that improving the water-power of the river, by constructing a canal for water-power purposes, is merely digging a mill race, and that the doing so, for the purpose of propelling a public grist-mill in the precinct, is not constructing a work of internal improvement, within the statute. We are not referred to any decision of the highest court of Nebraska, made before the plaintiff became, on January 1st, 1876, the *bona fide* owner of these coupons, or even since, holding in accordance with the contention of the defendant.

In *Osborne* v. *County of Adams*, 106 U. S. 181, this court decided, in November, 1882, that, under the same statute that is in question here, bonds issued to aid in the construction of a steam grist-mill were not issued to aid in the construction of a work of internal improvement. There was a suggestion in the opinion in that case, that the statute did not cover the construction of any kind of grist-mill as a work of internal improvement. During the same term a petition for rehearing was filed, and the attention of the court was called to the case of *Traver* v. *Merrick County*, 14 Neb. 327, in which the Supreme Court of Nebraska had held, at its January Term, 1883, that county bonds issued by county commissioners, under the act of 1869, as a loan to an individual to aid in building a public grist-mill and water-power in the county, were valid. But this court adhered to its view that the act did not cover the construction of a steam grist-mill, and denied the rehearing. *Osborne* v. *Adams County*, 109 U. S. 1.

In *Union Pacific Railroad* v. *Commissioners*, 4 Neb. 450, it was held, in 1876, that a public wagon bridge, over the Platte River, as an extension of a public highway, was a work of internal improvement, under the act of 1869, being a work from the construction of which benefits were to be derived by the public. But the court said that no authority existed to aid a merely private enterprise. See, also, *United States* v. *Dodge County*, 110 U. S. 156.

In *The State* v. *Thorne*, 9 Neb. 458, 460, in 1880, it was suggested that works of internal improvement, under the act, might include railroads, turnpikes, canals, and numerous other enterprises, not objects of private concern purely

In *Dawson County* v. *McNamar*, 10 Neb. 276, in 1880, it was held that the building of a county court house was not a work of internal improvement, under the act, and it was said that "works of internal improvement" meant "only those works within the State in which the whole body of the people are supposed to be more or less interested, and by which they may be benefited."

In *Traver* v. *Merrick County*, before cited, the court considered the act of 1869 and the question whether a water grist-mill was a work of internal improvement, within the meaning of that act. It cited the provisions of an act "relating to mills and mill dams," which passed and took effect February 26th, 1873, Gen. Stat. of 1873, chap. 44, p. 472, and especially sections 1, 2 and 24 to 29 of that act, as authorizing a person who, in good faith, had expended a considerable sum of money towards the erection of a grist-mill on a stream, to obtain an injunction against the making by another person of a dam across the same stream on his own land, the effect of which would be to destroy the water-power of the former; and it stated that, under the cases of *Nosser* v. *Seeley*, 10 Neb 460, and *Seeley* v. *Bridges*, 13 Id. 547, that was the settled law of the State. The act of 1873 provides that all mills for grinding grain, and which shall grind for toll, shall be deemed public mills; that the owner or occupier of every public mill shall grind the grain brought to his mill as well as the nature and condition of his mill will permit, and in due time as the same shall be brought; and that he shall post in the mill his rates of toll, and the county commissioners of the county shall establish and regulate the amount of toll to be charged. The court held, in *Traver* v. *Merrick County*, that the legislature had authority to provide that streams capable of being applied to mill purposes should be so utilized for the benefit of the public; that the right to erect a mill and dam, on paying damages for the injury caused, was granted for the better use of the water-power, on considerations of public policy and the general good, with a view to keeping up mills for use; and that, under the act of 1873, water grist-mills were mills for the use of the public. It also held that, under the act of 1869, works of in-

ternal improvement were not restricted to railroads and works of like character, such as canals, turnpikes and bridges; that, if an internal improvement was for public use, subject to the control and regulation of the legislature, it was within the act; and that, as the mill in that case was one to be propelled by water, and was for the use of all who might desire to patronize it, at such rates of toll as might be prescribed by the county commissioners of the county, it was a work of internal improvement, within the act.

We concur in these views, and regard them as a sound exposition of the legislation of Nebraska. In *Traver* v. *Merrick County* the thing aided was the building a public grist-mill and water-power. As we understand the present case, the thing aided is the improving the water-power of a river, by constructing a canal for water-power purposes to propel public grist-mills. This is within the act of 1869. A water grist-mill cannot be run so as to be a public grist-mill, unless it is furnished with water-power, and, if an existing river needs to be improved to furnish such power, the improvement of it is a public work of internal improvement.

In *Township of Burlington* v. *Beasley*, 94 U. S. 310, this court held that a steam custom grist-mill, not on a water-course or operated by water-power, was a " work of internal improvement," within an act of Kansas authorizing municipal bonds in aid of " the construction of railroads or water-power, . . . or for other works of internal improvement." The decision was based, in part, on the ground, that there was another act which declared that "all water, steam or other mills, whose owners or occupiers grind or offer to grind grain for toll or pay, are hereby declared public mills," and provided for the order in which customers should be served, and prescribed the duties of the miller, and that the rates of toll should be posted; and, as it would also be competent for the legislature to regulate the toll, it was held that aid to the mill was aid of a public work of internal improvement.

Enterprises of a class within which that in the present case falls are so far of a public nature that private property may be appropriated to carry them into effect. *Boston & Roxbury*

*Mill Corp.* v. *Newman*, 12 Pick. 467; *Commonwealth* v. *Essex Company*, 13 Gray, 239, 249; *Lowell* v. *Boston*, 111 Mass. 454, 464; *Scudder* v. *Trenton Delaware Falls Co.*, 1 Saxton Ch. 694; *Beekman* v. *Saratoga & Schenectady Railroad Co.*, 3 Paige, 45. . And when the legislature has given to grist-mills and the water-power connected with them such a public character as in the present case, the improvement of the water-power must be regarded as a public work of internal improvement, which may be aided in its construction by the issue of bonds, under the act in question.

These conclusions require that

*The judgment of the Circuit Court should be reversed, and the case be remanded to that court, with direction to over-rule the demurrer to the petition, and to take such further proceedings in the cause as may be required by law and as shall not be inconsistent with this opinion.*