KIMBALL *v.* BOARD OF COM'RS and others.

*(Circuit Court, D. Indiana.* July 17, 1884.)

1. MUNICIPAL DEBT IN EXCESS OF CONSTITUTIONAL LIMIT — COUNTY BONDS (INDIANA) IN AID OF GRAVEL ROADS—COUNTY LIABILITY.

County bonds, issued under the laws of Indiana for the construction of gravel roads, notwithstanding the special provision made for payment by assessments upon lands within two miles of the improvement, constitute a county indebtedness within the meaning of the amendment of March 14, 1881, to the state constitution, which forbids and declares void any debt of any political or municipal corporation in excess of 2 per centum on the taxable property within such corporation.

2. SAME—POWER OF COUNTY BOARDS—PUBLIC IMPROVEMENTS—PRIVATE BENEFITS.

Under the gravel-road laws of Indiana, which require the proposed improvement to be of public utility, county boards may issue bonds which shall constitute a general county liability to construct such roads, though the benefits may inure mainly to a particular district or to individuals.

3. SAME—VOID BONDS—RECOVERY OF MONEY PAID FOR—IDENTIFICATION NOT NECESSARY.

In an action for the recovery of money paid to a county for a void issue of bonds, it is no obstacle to the granting of relief that the money has been commingled with other moneys and cannot be indentified, if the proper amounts can be ascertained.

In Equity.

*Claypool & Ketcham,* for complainant.

*Harrison, Miller & Elam,* for defendants.

WOODS, J. This bill is brought against the board of commissioners and the treasurer of Grant county, Indiana, for the recovery of money paid by the plaintiff to the county as the purchase price for certain bonds of the county, issued and sold to the plaintiff under orders of the board, for the purpose of raising money to be used in the construction of free turnpike roads in the county theretofore ordered by the board to be constructed. The ground on which the plaintiff predicates his claim of right to recover the money is that the bonds issued to him were illegal and void, because, when they were issued, the county was already indebted to the full amount of *two* per centum of the taxable property within the county, as determined by the last assessment for state and county taxes previous to the issue of the bonds; that the plaintiff purchased the bonds in the belief that they constituted a lawful security ; and that the money which he paid to the county for the bonds is still in the county treasury unexpended. An offer to surrender the bonds to the county, and a demand for the return to the plaintiff of his money before the bringing of the action, are alleged, and also an offer and readiness to produce the bonds in court for surrender.

The answer, which is verified, does not controvert the allegations of the bill, but shows in detail the proceedings had before the board of commissioners of the county for the construction of certain free

gravel roads in the county, and that, for the purpose of obtaining the money necessary to make the proposed improvements, the board, on the twenty-third day of July, 1883, made an order authorizing the issue and sale of bonds of the county to the amount of $43,000; that the bonds were issued and sold to the plaintiff for the sum of $43,-000, and the money received therefor put into the county treasury, where a part of it remains mingled with other moneys of the county; that the board had contracted with certain persons named for the construction of the proposed roads for which the money was borrowed, who had entered upon, partly performed, and were prosecuting the work according to contract. The plaintiff has filed exceptions to these averments of the answer as immaterial and insufficient.

The statute under which the bonds were issued was enacted in 1877, taking effect March 3d of that year, and confers upon the board of commissioners of any county in the state power, as in the act provided, to construct, improve, and maintain free turnpike or gravel roads in the county, and after various provisions in respect to the proceedings, requiring, among other things, an assessment upon benefited lands lying within two miles of the improvement, the seventh section reads as follows:

"For the purpose of raising the money necessary to meet the expense of said improvement, the commissioners of the county are hereby authorized to issue the bonds of the county, maturing at annual intervals after two years, and not beyond eight years, bearing interest at a rate not to exceed six per cent. per annum, payable semi-annually, which bonds shall not be sold for less than their par value. Said assessment shall be divided in such manner as to meet the payment of principal and interest of said bonds, and so be placed upon the duplicate for taxation against the lands assessed, and collected in the same manner as other taxes; and when collected as other taxes, the money arising therefrom shall be applied to no other purpose than the payment of said bonds and interest: provided that no bonds shall be delivered or money paid to any contractor, except on estimate of work done as the same progresses or is completed; and said road or improvement shall be kept in repair as other state and county roads are: provided, further, that the amount of such bonds outstanding at any one time shall not exceed the sum of one hundred thousand dollars principal." Rev. St. 1881, §§ 5091–5112.

A later act (1883) has increased the maxium of bonds that may be outstanding to $150,000.

The question to which in the main the discussion of counsel has been directed, is whether or not the bonds of a county, issued by this authority, constitute an indebtedness of the county within the meaning of an amendment to the constitution of the state, adopted March 14, 1881, which declares:

"No political or municipal corporation in this state shall ever become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount, given by such corporations, shall be void: provided, that in time of war, invasion, or other great public calamity," etc.

Two principal reasons are urged against an application of this inhibition to these bonds: *First,* that the bonds evidence no general liability of the county, because they are payable solely out of the assessments made, as required by the statute, upon lands within two miles of the improvements, to promote which they were issued; *second,* that if the bonds be conceded to be obligations of the county, yet, because of the special means for their payment provided in local assessments, the proceeds of which can be applied to no other purpose than their discharge, the debt should not be deemed to be within the scope of the inhibition.

In support of these propositions, counsel have referred to the following, among other, cases and authorities: *Jordan* v. *Cass Co.* 3 Dill. 185; *County of Cass* v. *Johnston,* 95 U. S. 360; *Davenport* v. *County of Dodge,* 105 U. S. 237; *Meath* v. *Phillips Co.* 108 U. S. 553; S. C. 2 Sup. Ct. Rep. 869; *U. S.* v. *County of Clark,* 96 U. S. 211; *U. S.* v. *County of Macon,* 99 U. S. 582; *Sackett* v. *City of New Albany,* 88 Ind. 473; *City of Springfield* v. *Edwards,* 84 Ill. 626; Burroughs, Pub. Secur. p. 635, § 51, p. 545, § 47; Story, Eq. § 1044; 1 Dill. Mun. Corp. 486.

In my judgment neither of these propositions is true, or supported by the decided cases. In respect to the first, it cannot be said to be true in fact that the bonds are payable solely from the proceeds of the special assessments, unless an inference to that effect must be drawn from the requirement that the assessment be made, and that the money derived therefrom shall be applied to no other purpose. But this inference, as it seems to me, in the light of the whole statute, is neither necessary nor admissible. While the special fund is provided, which may be used for no other purpose, it is not declared that no other fund may not be used for the same purpose. The suggestion made, that if other funds be used to pay such bonds the special fund when collected could not be used at all, presents no difficulty. It is sufficiently manifest that in such case the special fund should be used to replace the sum first taken from the general funds. The letter of a single clause cannot be permitted to kill the spirit of an entire statute. Indeed, this clause, as I suppose, adds nothing to the force of the statute, as without it the fund specially provided for the payment of the bonds must have been held to be no less sacredly devoted to that purpose. The express declaration against any other use can at most be regarded only as emphasizing what would have been the rule without such expression.

In this view, the decision in *U. S.* v. *County of Clark, supra,* is inconsistent with the propositions asserted by the respondents, for in that case, notwithstanding a special tax authorized for the purpose of paying the bonds of counties issued in aid of a railroad company, it was held "that for any balance remaining due on account of principal or interest after the application of the proceeds of the special tax authorized, the holders [of the bonds] were entitled to payment

out of the general funds of the county," (see *U. S.* v. *County of Macon, supra;*) and in the opinion it is said:

"There is no provision in the act that the proceeds of the special tax alone shall be applied to the payment of the bonds. None is expressed, and none, we think, can fairly be implied. It is no uncommon thing in legislation to provide a particular fund as additional security for the payment of a debt. It has often been done by the states, and more than once by the federal government. Limitations upon a special fund provided to aid in the payment of a debt are in no sense restrictions of the liability of the debtor."

In *Jordan* v. *Cass Co.* and *County of Cass* v. *Johnson* it was not claimed that the bonds sued on were a debt of the county; and the action in each case was prosecuted, and finally upheld by the supreme court, for the purpose of ascertaining the amount due, and obtaining against the county formal judgment, which could be enforced only by *mandamus*, compelling the levy and collection of the necessary taxes or assessments upon the local district for which the bonds had been issued. Any pretense of a general liability of the county in these cases was impossible, on account of an express constitutional provision; which is quoted by Judge DILLON in his opinion in *Jordan* v. *Cass Co.*

In the case of *Davenport* v. *County of Knox* there was no constitutional provision to consider, but the statute under which the bonds were issued left no room for asserting that they created a county obligation. In the same act provision was made for the incurring of liability both by counties and by precincts,—bonds to be issued by the county commissioners in either case; but in the case of a precinct, "special bonds" "for such precinct;" and in accordance with the practice recognized in the other cases (*supra*) judgment was rendered against the county in form, but enforceable only against the property of the district. Nothing more than the right to this relief was claimed in the bill, and beyond this these decisions establish nothing; and further than this, as it seems to me, they afford no aid to the present discussion. For similar cases see *U. S. ex rel.* v. *Co. Com'rs Dodge Co.* 110 U. S. 156; S. C. 3 Sup. Ct. Rep. 590; *Blair* v. *County of Cuming,* 111 U. S. 363; S. C. 4 Sup. Ct. Rep. 449.

There is, however, authority which is directly in point. The Indiana statute under consideration is a transcript in substance, and almost literal, from an Ohio statute which was enacted in 1867, and under which arose a case that was decided by the supreme court of Ohio in January, 1882. See *State* v. *Com'rs,* 37 Ohio St. 526. The county of Fayette had issued bonds under the statute, but at the suit of owners of some of the lands assessed the assessment in respect to those lands had been annulled, (*Hays* v. *Jones,* 27 Ohio St. 218;) "so that, after applying the amount collected on the assessment, twenty-nine of the bonds, for $500 each, were left wholly unpaid and unprovided for." The action was to compel the board of commissioners to levy a general tax in order to provide for the pay-

ment of these bonds, and the objection was made, as in the present instance, that the bonds were payable only out of the special assessment, and were not obligations of the county enforceable generally. The court ruled the contrary, and after quoting from the seventh section of the act, identical with the section quoted *supra*, said:

"From the language of the statute here quoted, perhaps no one would deny that the debt evidenced by the authorized bonds is the debt of the county in its *quasi* corporate capacity. Indeed, the language is not susceptible of any other meaning; but inasmuch as the same section provides for an assessment upon the lands specially benefited, and lying within two miles of the improvement, to meet the payment of the interest and principal of the bonds, it is contended that no other mode or manner of taxation can be resorted to for the purpose of paying the bonds. However plausible this contention may be, we think it cannot be maintained. That the legislature might have so provided we do not deny, but if such was the intention it should have been expressed in very clear and unmistakable terms. Such terms were not used, nor is such inference clear. On the other hand, the liability of the county in its *quasi* corporate capacity is expressed in apt and unmistakable words, and if, for such liability, a portion only of the taxable property of the county can, in any event, be taxed, such intent on the part of the legislature should have been expressed in like apt and unmistakable terms, as between the county and the taxing district created by the statute, to-wit: 'The territory within two miles of the road improvement.' It cannot be doubted that the intent of the statute was to impose the burden of the improvement upon the latter, but as to the creditor holding bonds issued to meet the expenses of the improvement, the faith of the county, to the extent of all its taxable property, was pledged, by the express authority given to the commissioners, to issue therefor the bonds of the county. Whenever, therefore, payment of the bonds cannot be provided for by local assessment, under the statute, it is the duty of the commissioners to make provision for their payment, as for the payment of other debts of the county, by a levy upon all the taxable property of the county."

The point established, as I think it must be held to be, that the bonds are an obligation or debt of the county, the constitutional restriction must apply, as it seems to me, notwithstanding the special fund, or, rather, resource, provided in the statutory assessment for their payment; and notwithstanding the fact, which may be conceded, that in most cases the assessment will ultimately prove collectible in sums sufficient to pay the debt and interest. This assessment was doubtless designed mainly to secure an indemnity to the county, and incidentally to enhance the value of the bonds in the market; but the special provision for payment cannot reasonably be said to remove the force of the authority given to issue the "bonds of the county,"—words which, *ex vi termini*, import an obligation of the county; and such an obligation is a debt, within the clear and comprehensive language of the constitution already quoted. If not, then why should any form of indebtedness be deemed obnoxious to the provision, if only payment be provided for, either by special assessment or by a general levy of taxes, made or required to be made? Such a construction would practically remove all restriction from the legislative will, since by requiring an assessment or general levy, however

large, and divided and distributed over whatever number of years for collection, the legislature might authorize the issue of bonds at pleasure, piling one assessment or levy upon another, without regard to the amount of existing indebtedness; and so, notwithstanding the supposed amendment to the constitution, the mortgaging of the future for the extravagant indulgence of the present might go on unhindered. Possibly, by means of "bonds of the county," made payable exclusively from the proceeds of local assessments, the constitutional restriction may be evaded; but, if so, the legislative purpose to do it should be clearly expressed, or unmistakably and necessarily implied from the language of the statute. All municipal indebtedness must be paid with moneys derived either from special assessments or from tax levies; the property of the corporation or of its inhabitants cannot be taken upon an execution at law; and consequently, as seems clear to me, a municipal obligation ought to be deemed to be no less a debt, within the meaning of the constitution, because an assessment or levy has been already made or required to be made preparatory to its future payment. There is nothing to the contrary of this in the decision of the supreme court of Indiana in the case of *Sackett* v. *New Albany, supra*, nor in the Illinois and Iowa cases referred to in that opinion. "The suitable provision for the discharge of an obligation," which, according to those cases, as I understand them, may justify the issuance of an order upon the municipal treasurer, must be the possession of "the ready means necessary to pay a claim against it." They certainly do not mean that an assessment or levy, made or to be made, and to be collected in the future, for the payment of a debt not due, is a suitable provision. Nothing less, however, will support the position of the respondents.

Besides being within the letter, the bonds in question are within the spirit, of the constitutional inhibition, because in proportion to the amount of them issued by any community, like any kind of debt, they affect the public prosperity and solvency.

In the case of *Dewey* v. *State*, 91 Ind. 173, is a decision which is not without significance in this connection. Section 4246, Rev. St. 1881, in force since July 2, 1877, requires that no bid for the doing of a county work shall be received or entertained by any board of county commissioners unless accompanied by a bond of prescribed character and conditions. The fifth section of the gravel-road law (Rev. St. § 5095) requires of a contractor, under that law, a bond conditioned simply "for the proper performance of his contract within the time and manner prescribed as the county commissioners may deem expedient." The court in this case holds that section 4246 is applicable to the bond required in section 5095, and that a bond given under the latter section, and containing the conditions required in the former, as well as that specified in the latter, will be enforced in respect to all of the conditions. This is the scope of the decision on this point, as I understand it, and it would seem that the court must

have regarded the construction of free gravel roads under the statute as a county work, and not merely a work for a district done under the supervision of the commissioners.

Some question has been made of the power of the county board to issue bonds, which should constitute a general county liability, "to construct a gravel road for the benefit of and to enhance the value of the lands of A. and B.," or of a particular district. The law, however, requires that the proposed improvement in each case shall be one of "public utility;" and that public highways may be constructed at the expense of the county, or of the district in the vicinity of the work, or of both, according to the legislative pleasure, cannot be doubted.

The further point is made, that, conceding the bonds to be invalid, the plaintiff can have no remedy, especially as it is shown that the money paid by him for the bonds has been mingled with other moneys of the county in the treasury. It is not disputed that if the money of the plaintiff could be identified, he might reclaim it in such a case; and, this being so, the mere commingling of his money with that of the county, while the proper amounts are ascertainable, should not be deemed an obstacle to the granting of relief.

Ordered that the exceptions to the answer be sustained.