## CITY OF CINCINNATI v. VESTER. SAME v. RICHARDS et al. SAME v. REAKIRT.

Circuit Court of Appeals, Sixth Circuit. June 6, 1929.

Nos. 5343–5345.

John D. Ellis, City Sol., and Ed. F. Alexander, Asst. City Sol., both of Cincinnati, Ohio, for appellant.

John Weld Peck, of Cincinnati, Ohio (Peck, Shaffer & Williams, Milton Sayler and Frank H. Shaffer, Jr., all of Cincinnati, Ohio, on the brief), for appellees.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

MOORMAN, Circuit Judge. In March, 1928, the appellant, City of Cincinnati, by its council, passed an ordinance to appropriate a strip of land 25 feet in width adjacent to the south line of Fifth street for the purpose of widening the street. By the same

ordinance the city undertook to condemn additional areas adjacent to this strip, on the south side thereof, between Main and Pike streets, the intersecting streets being Lawson Alley, Sycamore, Broadway, McAllister, and Lawrence. The appellees brought separate suits in the district court to enjoin the city from condemning their property lying within this additional area. The cases presented similar questions and were tried together in the court below, in which orders of injunction were issued from which these appeals are prosecuted. They were argued together in this court, and will be disposed of in one opinion.

The sole question for decision is whether the property is to be devoted to a public or a private use. A brief description of it is necessary. The Vester lot fronts on Broadway, 44 feet south of Fifth street, and is therefore 19 feet south of the 25-foot strip which is to be taken for street purposes. Upon this lot there is a brick house of three stories, the lower floor of which is occupied by Mrs. Vester's son, a physician in the active practice of medicine. The Reakirt lot is located at the corner of Fifth and Sycamore streets, fronting 138.8 feet on Fifth and approximately 150 feet on Sycamore. There is at present a temporary oil-filling station on this lot near the corner, and the remainder of it is used as a parking lot. The 25-foot strip actually to be used for a street is about one-sixth of the lot, but the city proposes to take the entire lot. The Richards lot has a frontage of 23 feet on the south side of Fifth street, and extends south therefrom to Buchanan street a distance of 100 feet. The city proposes to take, not only the 25 feet on Fifth street, but the entire lot back to Buchanan. This lot differs from the other two in that, to appropriate only 25 feet next to Fifth street, it would be necessary to cut through a building that is now on the lot. This building is not valuable enough, however, to differentiate the case in principle from the others.

We note, also, as bearing upon the purpose of the city, that fronting on the south side of Fifth street, as it is now constructed, between Main and Pike streets, there is a tract owned by the Masonic Temple Company, upon part of which there is a Masonic building, which is set back 25 feet from the street line. The other part is occupied by a vacant building that is not used in connection with the Masonic building, the north 25 feet of which is to be taken in the regular condemnation. Another tract on the south side of Fifth between Main and Pike streets, with like frontage, is owned and occupied by the congregation of the Sisters of St. Joseph. The building on this tract has been set back 25 feet from the present south line of Fifth street. No part of either of these tracts has been subjected to excess condemnation. It is to be said, however, that the buildings that have been constructed upon them are substantial and attractive.

Fifth street from Main street to Pike street is now 66 feet in width. To its further widening the appellees make no objection, but object to the taking of the excess area. It was stated in the ordinance authorizing the condemnation that this additional area was not to be occupied by the improvement, but was taken "for the more complete enjoyment and preservation of the benefits to accrue from the taking of the 25 foot strip." The answers alleged that the purpose of the taking was to further the appropriate development of the south side of Fifth street "by using or disposing of its excess in tracts of such size and with such restrictions as will inure to the public advantage."

The suits are based upon rights claimed under the Fourteenth Amendment. Under the laws of Ohio the only way in which these questions could be raised was by injunction proceedings. Railroad v. Greenville, 69 Ohio St. 487, 69 N. E. 976; Sargent v. Cincinnati, 110 Ohio St. 444, 144 N. E. 132. It is not, therefore, contended that these proceedings violate section 265 of the Judicial Code, or that the court is without jurisdiction to restrain the proposed action, if it violates constitutional rights.

The appropriating ordinance was enacted pursuant to article 18 of section 10 of the Constitution of Ohio.[1] That provision authorizes what is known as "excess condemnation," which, as broadly defined, is the taking by eminent domain of more property than is necessary for the creation of a public improvement, and of subsequently selling or leasing the surplus. The right is claimed in these cases upon three grounds. The first, called the "remnant" theory, is that, by tak-

[1] Appropriation in Excess of Public Use. A Municipality appropriating or otherwise acquiring property for public use may in furtherance of such public use appropriate or acquire an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as shall be appropriate to preserve the improvement made. Bonds may be issued to supply the funds in whole or in part to pay for the excess property so appropriated or otherwise acquired, but said bonds shall be a lien only against the property so acquired for the improvement and excess, and they shall not be a liability of the municipality nor be included in any limitation of the bonded indebtedness of such municipality prescribed by law.

ing only such parts of the land as are needed for street purposes, fragments of lots would remain of such size and shape as to render them separately valueless, with the result that the city would be required to pay for the whole, although it took only a part, and with the further result that, because of the lack of such value, the city would thereafter be deprived of collecting taxes on this property. The second or "protective" theory is that, if the city owned the adjacent land, it could sell it under restrictions that would preserve the beauty of the street, and thus facilitate the increase in the values of the surrounding property. The third or "recoupment" theory is that the city would be able to dispose of the parts of the property not needed for the street at prices that would enable it to recoup much of the cost of the street construction.

The remnants theory, as technically considered, is not applicable to the property here involved. No part of the Vester property is included in the 25-foot strip. Only one-sixth of the Reakirt property is included therein, and the remaining five-sixths is sufficiently large for appropriate building sites for that section of the city. Similarly, what is left of the Richards property, three-fourths, would be valuable and utilizable for purposes suitable to the location of the property. Thus in one case no part of the property is to be occupied by the street, and in each of the others there will be enough left to meet the needs of suitable buildings for that vicinity. Consequently, in none of them can it be said that in assessing damages to the owner the jury would be justified in taking as its criterion the value of the entire tract. It ought not to be held, we think, that, because there would be unusable portions of other adjacent lots, the city should have the right to take property that is usable merely to join it with those unusable remnants in order to sell them advantageously.

The protection theory has no practical aspects, and may be entirely disregarded. The proofs do not show that the city has any present plan for beautifying or establishing building restrictions on the south side of Fifth street. Nor does it appear that the ownership of this property any more than that of the adjoining property is essential to the development or the carrying out as a whole of any plans of that character that the city may hereafter devise. This leaves only the recoupment theory. The court below rightly found that it was upon that theory alone that the city was proceeding. It is sought to be

justified upon the ground of a public benefit amounting to a public use.

■ It is to be admitted that, under our present methods of living, public necessity requires that the citizen be deprived of much of the freedom of use of his property that formerly seemed to inhere in its ownership. In dealing with this enlarged public interest the courts, nevertheless, have not departed from established principles, but have only applied them to new conditions; and it is the law now, as it always has been, that the due process clause of the constitution applies to the state and all of its agencies. Chicago B. & Q. R. Co. v. Chicago, 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979; City R. Co. v. Citizens' Street R. Co., 166 U. S. 557, 17 S. Ct. 653, 41 L. Ed. 1114. It is equally well settled that condemnation for a non-public use is a denial of due process of law (Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369; Madisonville Traction Co. v. Mining Co., 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462), and that whether the use is public or private is a judicial question (Hairston v. Railway Co., 208 U. S. 598, 28 S. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008). This latter question is sometimes difficult of solution. Public benefit has been spoken of by some of the courts as a public use, but properly so only with respect to the case at hand, and where the public interest is so paramount as to require the subject-matter for a public use. None of the cases relied upon by the city, some of which are cited in the margin,[2] by analogy or otherwise, holds that such a use as the city proposes to make of these properties is a public use. In none of them has the use been found to be of a public character because of financial benefits to the condemnor or taker, as such, but it uniformly has been made to depend upon a use so dominantly and directly related to the public as to be indispensable to its welfare. That cannot be said in these cases.

■ We do not say that the city of Cincinnati might not in a proper case take land adjacent to one of its public streets for a lateral support or to preserve the street as such. Neither do we decide that there may not be cases where the remnant would be so small as compared to what was actually need-

---

[2] Blair v. Cumming County, 111 U. S. 363, 4 S. Ct. 449, 28 L. Ed. 457; Head v. Manufacturing Co., 113 U. S. 9, 5 S. Ct. 441, 28 L. Ed. 889; Clark v. Nash, 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171; Strickley v. Highland, etc., Co., 200 U. S. 527, 26 S. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174; Hairston v. Railway Co., 208 U. S. 599, 28 S. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008.

ed and taken that what was needed might not be regarded, in view of what was left, as the equivalent of the entire tract, and thus the entire tract be taken. We consider only these cases before us; and what we decide is that the proposed use is not a public use within the meaning of that term, as it heretofore has been held to justify the taking of private property. The provision of the constitution is that the municipality in acquiring property for public use "may, in furtherance of such public use," appropriate or acquire an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as "shall be appropriate to preserve the improvement made." This would seem to mean in furtherance of the normal use to which the property that is occupied by the improvement is devoted—here the use and preservation of the street for the purposes of travel. If it means, as the city here contends, that property may be taken for the purpose of selling it at a profit and paying for the improvement, it is clearly invalid.

It is, of course, true that great deference should be paid to the decisions of the courts of a state in determining what is a public improvement. Hairston v. Railway, supra; Union Lime Co. v. C. & N. W. R. Co., 233 U. S. 211, 34 S. Ct. 522, 58 L. Ed. 924; Jones v. Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660. This rule, though, does not extend, as the city seems to claim, to legislative action, for, as has been said, the question of the character of the use is one for the courts. Neither is the adoption of excess condemnation by foreign countries and by several of the states of the Union a matter of importance in these cases, because whether the use is public or private depends necessarily upon the facts relating to the particular subject-matter involved. Fallbrook Irrigation Co. v. Bradley, 164 U. S. 113, 17 S. Ct. 56, 41 L. Ed. 369. Moreover, the constitutional rights here relied upon bring about a further lack of relevancy in the practice as carried on in foreign countries. And, as respects the legislative action of the states, we, have been referred to no decision where any such statute has been sustained. The question has not been adjudicated in the Ohio courts. The courts of last resort in Massachusetts, New York, Virginia, and Pennsylvania have held that the statutes of those states, at least for the purposes here involved, were a denial of due process of law. Old Dominion Land Co. v. United States, 269 U. S. 55, 46 S. Ct. 39, 90 L. Ed. 162, is dis-

tinguishable from these decisions and from the present cases, in that in that case the land was actually devoted to a public use at the time condemnation proceedings were filed. It was also needed for a like future use for a considerable time thereafter, and it could not be so used except by a taking. We do not hold that the provision of the state Constitution might not be validly enforced in a proper case, but that as applied by the city in these cases it violates the due process clause of the Constitution.

Decrees affirmed.