James S. Brown, J.
After a hearing on the question of service, held on September 26, 1969, the court found that timely notice of this condemnation proceeding had been mailed to the owners of the above parcels and by oral decision denied items a and b of four identical motions. These items sought to open movants ’ default and to vacate the order of condemnation signed on June 5, 1969.
Accordingly, only item c of said motions remains undecided. This item seeks an order dismissing said application to condemn insofar as it applies to certain additional lands referred to therein.
The basis advanced for the relief sought is the claim that the notice mailed is defective, as to any additional lands, because it does not state, as required by section 382 of the New York City Charter, the purpose for which said additional lands are being condemned and violates the due process provisions of the Fourteenth Amendment to the Constitution of the United States because said notice does not state that the land is to be taken for a public use. It is also claimed that subdivision (e) of section 1 of article IX of the New York State Constitution, which authorizes local governments to acquire private property by eminent domain proceedings, is null and void because it is vague and uncertain and provides no standard for implementation.
The answering affidavit of respondent states that the application and order entered herein comply with subdivision (e) of section 1 of article IX of the New York State Constitution which gives local governments the power to use eminent domain proceedings to acquire property and with sections C15-1.0 and C15-3.0 of the New York City Administrative Code.
Subdivision (e) of section 1 of article IX of the New York State Constitution reads:11 Local governments shall have power *1064 to take by eminent domain private property within their boundaries for public use together with excess land or property but no more than is sufficient to provide for appropriate disposition or use of land or property which abuts on that necessary for such public use, and to sell or lease that not devoted to such use. The legislature may authorize and regulate the exercise of the power of eminent domain and excess condemnation by a local government outside its boundaries.”
The New York City Administrative Code (§ C15-1.0) gives the following definition: “ 2. ‘ Excess lands’, or ‘ additional lands ’, or ‘ additional real property ’: The real property in addition to the real property needed or required for laying out, widening, extending or relocating a park, public place, highway or street.”
Section C15-3.0 of said code states: “ Power to condemn excess lands.— The city, in acquiring real property for any improvement, may acquire more real property than is needed for the actual construction of the improvement. The mayor may authorize the city to acquire additional real property in connection with any improvement, and direct that the same be acquired with the real property to be acquired for the improvement. Such additional real property, however, shall be not more than sufficient to form suitable building sites abutting on the improvement. The title which the city shall acquire to additional real property shall in every case be a fee simple absolute. Additional real property shall be acquired by the city in connection with a street improvement only when the title acquired for the improvement shall be in fee. When the mayor shall have authorized the acquisition of title to additional real property in connection with an improvement, title to such additional real property shall be acquired by the city in the manner and according to the procedure, except in such respects as in this title set forth, provided for the acquisition of title to the real property required for the improvement and in the same proceeding in which title to the real property required for the improvement shall be acquired.”
Section 382 of the Charter of the City of New York requires that notice -by mail of a condemnation proceeding be given to the owner of the property to be taken and .reads. as follows: “ Notice to owners of proceeding to acquire property. — In addition to all other requirements of law, written notice of the application to have compensation for real property ascertained in any proceeding brought by the city to acquire title to real property shall be given by the corporation counsel to the owners of all property affected by the proceeding at least ten days *1065 prior to such application, by mailing the same to such owners at the address registered or filed with the finance administrator for the purpose of forwarding to them bills for taxes, assessments and frontage water rates. Such notice shall state the purpose for which the property is to he .acquired and the date when such application will be presented and shall contain a copy of such application. Upon request by the corporation counsel the Finance Administrator shall furnish a certified list of the registered or filed names and addresses of such owners. Failure to comply with the directions contained m this section shall not invalidate or affect the proceeding.” (Emphasis added.)
A copy of the notice of application to condemn which was mailed to the owners is attached to the answering affidavit. The notice states that the City of New York intends to acquire title to certain real property required for the widening of Flatbush Avenue and Utica Avenue, “ and title, in fee simple, to additional lands in connection therewith.” The notice contains no further reference to any purpose for which the additional lands are to be acquired.
The land which the city proposes to take in excess of that actually to be occupied by the widened street includes the following:
(a) A triangular area of some 12,900 square feet consisting of damage parcels designated on the acquisition and damage map as 2A, 3A, 4A, 5A, 6A, 7A and 8A. This area has frontages of 96 feet on Avenue S, 134 feet on East 51st Street and 165 feet on Flatbush Avenue.
(b) An irregular area of some 18,000 square feet consisting of Damage Parcels 10A, 11A and 12A, which has a frontage of approximately 340 feet on Flatbush Avenue, a depth of 140 feet where Damage Parcel 10A touches East 51st Street and a depth of approximately 40 feet where Damage Parcel 12A touches East 52nd Street.
(c) An irregular area of some 18,200 square feet consisting of Damage Parcels 13A, 14A and 15A. Damage Parcels 14A and 15A have a frontage of 300 feet on Flatbush Avenue between Avenue T and East 53rd 'Street and a depth of 40 feet. Damage Parcel 13A is roughly triangular, with one side of 100 feet, one side of 150 feet and with an hypotenuse of 122 feet fronting on East 53rd Street.
(d) Damage Parcel 16A of some 3,200 square feet, which is an irregular rectangle on the southeast corner of Flatbush Avenue and East 53rd Street, has a 91-foot frontage on Flat-bush Avenue, is 25 foot deep and its easterly boundary runs 129 feet to East 53rd Street where its frontage is 45 feet.
*1066 Respondent’s answering affidavit (p. 5) reads: “ The additional lands comprise remainder portions of the acquired properties, which constitute the excess taking and has been held proper. This has not been shown as a taking for the purpose of reselling and making profit or to defray the cost of improvement. The extent of such taking is a matter for legislative discretion and not for judicial adjudication. Exhibit A, attached hereto, contains the transcript summaries of the City’s thorough consideration of the factors indicating the public necessity and purpose for this entire acquisition.”
The lage size of the plots designated as additional lands (a total of more than 50,000 square feet) leads this court to the conclusion that the theory of avoidance of remnant lots has no application here. Whether the purpose of the taking is for resale at a profit as claimed by movants, the court cannot say. That the extent of a taking is a matter for legislative discretion and not for judicial adjudication is the general rule. However, this rule does not preclude a judicial inquiry to determine whether the taking is in the public interest (Matter of Brent v. Hoch, 25 Misc 2d 1062, affd. 13 A D 2d 505). With regard to the papers designated as Exhibit A, the court agrees with the movants’ contentions that they are merely summaries of conversations between representatives of various city agencies concerning the proposed widening of Flatbush Avenue and have no probative value.
The court was confronted with a similar situation in the case of City of Cincinnati v. Vester (33 F. 2d 242, affd. 281 U. S. 439 [1929]). The City Council of Cincinnati passed an ordinance to appropriate a strip of land 25 feet wide adjacent to the south side of 5th Street for the purpose of widening the street and to appropriate additional areas adjacent to this strip. The ordinance stated that the additional area was not to be occupied by the improvement but was taken “ for the more complete enjoyment and preservation of the benefits to accrue from the taking of the 25 foot strip,” and was enacted pursuant to section 10 of article XVIII of the Constitution of Ohio which read in part: “Appropriation in Excess of Public Use. A Municipality appropriating or otherwise acquiring property for public use may in furtherance of such public use appropriate or acquire an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as shall be appropriate to preserve the improvement made.”
With reference to condemnation of property by municipal corporations, section 3679 of the General Code of Ohio stated in part: “Sec. 3679. Resolution shall be passed. When it is *1067 deemed necessary to appropriate property, council shall pass a resolution, declaring such intent, defining the purpose of the appropriation, setting forth a pertinent description of the land, and the estate or interest therein desired to he appropriated.”
The owners of the properties involved sued in the District Court to enjoin the city from condemning their property lying within the additional area and were successful in obtaining orders of injunction. An appeal was taken by the city to the Circuit Court of Appeals which stated (33 F. 2d, at p. 243):
‘‘ The sole question for decision is whether the property is to be devoted to a public or a private use. ’ ’ The court found the remnant theory and the protection theory inapplicable and found the proposed use for the excess lands not to be a public use because it was not in furtherance of the normal use to which the property occupied by the improvement is devoted, namely, the use and preservation of the street for the purpose of travel. The court also pointed out that the city might in proper cases take land adjacent to a public street for lateral support or to preserve the street as such and stated that there might be cases where the remnant left would be so small compared to what was actually needed and taken that what was needed might be regarded as the equivalent of the entire tract, and thus the entire tract could be taken. The decrees were affirmed.
An appeal was taken to the Supreme Court of the United States. Mr. Chief Justice Hughes delivered the opinion of the court which states (281 U. S., at p. 446): “ It is well established that in considering the application of the Fourteenth Amendment to cases of expropriation of private property, the question of what is a public use is a judicial one. ’ ’
The opinion continues (p. 447): “ Under the provision of the constitution of Ohio for excess condemnation when a city acquires property for public use, it would seem to be clear that a mere statement by the council that the excess condemnation is in furtherance of such use would not be conclusive. Otherwise, the taking of any land in excess condemnation, although in reality wholly unrelated to the immediate improvement, would be sustained on a bare recital. This would be to treat the constitutional provision as giving such a sweeping authority to municipalities as to make nugatory the express condition upon which the authority is granted.
1 ‘ To the end that the taking shall be shown to be within its authority, the municipality is called upon to specify definitely the purpose of the appropriation. This is the clear import of the provision of the Ohio statute (Ohio General Code, sec. 3679, supra) that the City Council, when it is deemed necessary *1068 to appropriate property, shall pass a .resolution ‘ defining the purpose of the appropriation. ’ # * It must be deemed to apply, according to its express terms, to every appropriation of private property by a municipality. The importance of the definition of purpose would be even greater in the case of taking property not directly to be occupied by a proposed public improvement than in the case of the latter which might more clearly speak for itself.”
The opinion concludes with the following (p. 449): “We conclude that the proceedings for excess condemnation of the properties involved in these suits were not taken in conformity with the applicable law of the State, and in affirming the decrees below upon this ground we refrain from expressing an opinion upon the other questions that have been argued.” The decrees were affirmed.
In the case at bar I find the words “ in connection therewith ” are as inconclusive as were the words ‘ ‘ in furtherance of such use ” in the Vester case and do not state any purpose for which the additional lands are being acquired. Since there is no statement of purpose this court will not attempt to conjecture as to whether a public purpose is involved.
My conclusion is that the notice mailed does not comply with section 382 of the New York City Charter insofar as the additional land is concerned because it does not state the purpose of acquisition; that this is a defect which invalidates the proceeding and cannot be remedied by the last sentence of said section. This determination makes further exploration of the additional points raised unnecessary.
Accordingly, item c of the motions which seek to dismiss the application to condemn is granted insofar as it applies to the additional lands set forth therein. The order of condemnation dated June 5, 1969 is modified by deleting therefrom any reference to additional lands contained therein.