## Case No. 7,517.

### JORDAN v. CASS COUNTY.

[3 Dill. 185.] [1]

Circuit Court. W. D. Missouri. 1874.

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

W. B. Napton, T. K. Skinker, and others, for the bondholders.

W. P. Hall, N. Holmes, Gage & Ladd, Robert Adams, Jr., Glover & Shepley, and others, for the county.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The bonds under consideration were issued under the act of March 23, 1868, by the county court of. the county, in the name of the county, on behalf of the township. This act has been held constitutional by the supreme court of the state (State v. Linn County Court, 44 Mo. 505), and it is our opinion that the constitution of the state (article 11, § 14), which prohibits the legislature from authorizing any "county, city, or town" to subscribe to the stock of any railroad company, unless authorized by two-thirds of the qualified voters therein, does not prohibit the legislature from authorizing township aid to railways, if two-thirds of the voters of the township shall sanction the proposition. Whether the legislature could authorize township aid to railways without the assent of two-thirds of the voters therein, need not be determined, for it has not undertaken to do so. The section of the constitution above mentioned does not in terms limit the legislative power, except as respects "counties, cities, and towns;" but other municipal creations would be within the mischief the constitution intended to remedy, and hence. it would seem. within its spirit and meaning. Supposing this to be so, however, the only limitation on the legislature would be, that it could not authorize the

aid by townships, or by the people within them, without the popular sanction which the constitution requires. It would not be a fair or legitimate construction of the provision of the constitution, to hold that it absolutely disabled the legislature as respects municipal creations or civil divisions of the state not therein mentioned.

Treating the act of 1868 as valid, the next question is, whether the holder of bonds issued in accordance with its provisions—that is, by the county court, in the name of the county on behalf of the township, pursuant to a two-thirds vote of the citizens of the township—can maintain an action thereon, for any purpose, against the county in whose name the bonds are made. At the outset of this inquiry, it may be remarked that we do not understand the plaintiff's counsel to contend that the bonds are the proper debt or obligation of the county, or that payment thereof may be enforced against the property of the county, or against the tax-payers or property in the county at large. The bonds recite that they were authorized by a two-thirds vote of the township; and, under the provision of the constitution above mentioned, not having been authorized, or purporting to have been authorized, by a vote of the qualified voters of the county, it is clear that they impose no obligation on the county, and equally clear that the real or ultimate liability is on the taxable property within the township. But how, and against whom, is this liability to be enforced and made available?

It is urged by the counsel for the county that the remedy of the bondholder is by an action against the township, or against the tax-payers and residents of the township, in whose behalf the bonds were issued. But there is no statute in Missouri creating "municipal townships for election purposes" bodies politic, and no provision is made for suits by or against them.

Undoubtedly the legislature designed that there should be a remedy upon these bonds; and if it were consistent with the legislative intent, the court would be justified in holding, if necessary to afford an effectual remedy, that the township was created by implication, as to this particular matter, a body corporate, and, as such, liable to be sued. But such a view is not necessary to give a remedy, and seems not to be consistent with the express provisions that the bonds should be issued in the name of the county, and the necessary taxes to pay them be levied and collected by the officers of the county. We are impressed with the conviction that this was done by the legislature because of the want of corporate power in the "municipal township for election purposes."

The next suggestion is that the action should be against the tax-payers and residents of the township in analogy to the principle of the well known case of Russell v. Men of Devon, 2 Term R. 667, and to the personal liability of the inhabitants of towns in New England for judgments against the town corporations. Beardsley v. Smith, 16 Conn. 368; Dill. Mun. Corp. §§ 446, 687, 693, note.

Such a personal liability on the part of the inhabitants for the debts of a public, municipal, or quasi corporation, is not elsewhere recognized to exist, and could not be enforced by an action at law without contravening the mode prescribed by the act under which the bonds were issued for acquiring the means of making payment thereof. The legislature has provided the mode of raising the means for making payment of the bonds, which is by the levy and collection of a "special tax" for that purpose, to be "levied on all the real estate lying within the township," and it has specially enjoined upon the county court the duty of levying and causing such to be collected; and, undoubtedly, this is such a duty as, supposing the bonds to be valid, may be enforced by mandamus. It is, to our mind, clear that the bondholder, if he chose to resort to the state tribunals, might, without first obtaining a judgment against either the county or township, file an information for a writ of mandamus, to be directed to the county court, to compel it to levy and cause to be collected the special tax from which alone can come the funds that the law has provided for the payment of the bonds. Dill. Mun. Corp. § 685, etc. But this court has no original jurisdiction in mandamus. It cannot acquire jurisdiction by an original proceeding in mandamus, but when jurisdiction otherwise exists it may issue the writ when necessary to the exercise of such jurisdiction, agreeably to the principles and usages of law. Bath Co. v. Amy, 14 Wall. [81 U. S.] 244; U. S. v. Union Pacific R. Co. [Case No. 16,599]. Therefore, the holder of these bonds cannot have any remedy in the federal court unless he is entitled to recover a judgment thereon, and to enforce such judgment, if necessary, by mandamus. This results not from any intrinsic difference in this respect between the state and federal courts, but from the peculiar language in which the jurisdiction of the circuit court of the United States is conferred by the judiciary act.

We are thus brought to the question whether a holder of bonds issued pursuant to the act of March 23, 1868, may recover judgment thereon against the county in whose name they are issued, to be enforced. if necessary, not by an execution against the county, but by mandamus against the county court to compel it to levy upon the property in the township the special tax which the law has enjoined as a duty upon it.

After some hesitation we have reached the conclusion that such an action will lie, and that this view will best carry out the design of the legislature in the enactment in question. The expressed purpose of the statute was "to facilitate the construction of railroads in the state of Missouri," and to this end it provided for the issue of negotiable bonds with coupons for interest attached. These

were to be negotiated and sold, and as townships were not known to the law as corporate bodies, some provision must be made whereby payment could, if necessary, be enforced. The act met the difficulty arising from the non-incorporation of townships by directing the bonds to be issued in the "name of the county." By the legislation of Missouri, the county has a corporate or quasi corporate capacity, with limited power to contract and sue and be sued. Wag. St. 407, 408.

And the county as a civil subdivision or arm or agency of the state is under the supreme control of the legislature, except so far only as its power is limited by the constitution. It seems clear when the legislature directed the bonds to issue in the name of the county that it meant to give to the bonds additional legal value, and this intent should be carried into effect by the court so far as it is consistent with the provisions of the organic law. The theory of the act is to use the county and the officers of the county to effect the purposes of the enactment. Hence the petition for the election is required to be presented to the county court, which is the official organ of the county; the election is to be ordered by the county court, and by this tribunal, also, the subscription "in behalf of the township" is to be made, and bonds "in the name of the county," issued. The county court is to levy and cause to be collected the taxes to pay the bonds, and the sheriff of the county and the county treasurer are required to see to the collection, and application of the taxes. Thus we see the county and the county officers are the instruments employed by the legislature to give effect to the act under which the bonds were issued. There must have been a purpose in requiring the bonds to be issued in the name of the county; but the constitution will prevent any liability attaching to the county—that is, to the people of the county, for the payment of these bonds. The constitution, however, will not be infringed by allowing the county to be sued if the judgment which is rendered is one which is not to be satisfied out of the private property of the county, if it owns or can own any which is subject to execution, or by a tax upon the people or property of the county at large. It seems to us that the provision that the bonds shall be issued in the name of the county implies a liability on the part of the county to be sued so far as is necessary to give effect to the rights of the holders of the bonds consistently with the provisions of the constitution. The right of the non-resident citizen to resort to the courts of the United States is one which is given by the constitution and laws, and it is a right which a citizen would be apt to regard as specially desirable, where if he be compelled to resort to the state courts it must be to a county whose citizens in whole or in part are his real adversaries, and who may constitute the jury to decide the case. This right, so valuable to a plaintiff, but which

deprives the defendant of no just advantage, since the federal courts are by their constitution to stand wholly indifferent between all parties, ought not to be considered as unavailable to a non-resident citizen unless a fair construction of the enactments applicable to the question so requires.

It is in our judgment practicable consistently with established legal principles to protect the constitutional rights of the counties, and at the same time to recognize the constitutional right of the non-resident citizen to come with these securities into court to have his rights in respect to them determined. This is to be effected by the nature of the judgment we render, which is not a personal judgment against the county, but only a judgment judicially establishing the plaintiff's debt if no defense shall be sucessfully made. If the debt shall be thus established we must suppose that the proper county court will levy and collect from the property within the township, the necessary tax to pay the debt, but if it should not, this court has the power and in that event it would become its duty, by mandamus, to cause such tax to be levied and collected.

This view, in effect, makes the county a trustee for the township, which is one of the subdivisions of the county, and a necessary party to the action, but not the party personally liable for the payment of the debt which the plaintiff may establish; and such, by the act under which the bonds in suit were issued, is the real relation which is established between the county and the township.

This, it is to be remembered, is a law action, and the judgment to be rendered must be one which, so far as the anomalous legislation under review will admit of it, is consistent with the restricted powers and somewhat rigid rules of a common law court. The provisions of the state statutes warrant the kind of judgment which it is proposed to render, if the plaintiff shall recover: that is, such judgment as may be found necessary to effectuate the rights of the parties. Wag. St. 1051, §§ 1, 2.

But the common law adjudications show that the judgment may be moulded so as to conform to the rights of the parties under the law, and by analogy support the view we take. Thus, in Peck v. Jenness, 7 How. [48 U. S.] 612, where the plaintiff attached goods of his debtor before the latter was proceeded against in bankruptcy, and where, pending the action, the debtor was discharged, the supreme court of the United States held that it was competent and proper for the court to render a judgment, notwitstanding the discharge, for amount of the debt, damages and costs, "to be levied only of the goods of the defendant attached on plaintiff's writ, and not otherwise." "The books," says Mr. Justice Grier, in this case, "are full of precedents for such a judgment. When an administrator pleads plene administravit, the plaintiff may

admit the plea, and take judgment of assets, quando acciderint. When the defendant pleads a discharge of his person under an insolvent law, the plaintiff may confess the plea and have judgment, to be levied only of defendant's future effects." [Peck v. Jenness] 7 How. [48 U. S.] 623. So, subsequently, the supreme court held that when contracts made payable in coin are sued upon, judgments may be entered for coined dollars and parts of dollars. Bronson v. Rodes, 7 Wall. [74 U. S.] 229.

Upon the whole, our judgment is that the action is well brought against the county; that the county may make defense, but if the plaintiff shall be found entitled to recover, he may have judgment against the county for his debt, damages and costs, to be enforced, if necessary, by mandamus against the county court, or the judges thereof, to compel them to levy and collect a special tax according to the statute in such case provided, and not otherwise. Demurrer overruled.