## DAVENPORT *v.* COUNTY OF DODGE.

1. Where a precinct in an organized county in Nebraska voted, pursuant to the statute of that State approved Feb. 15, 1869, to aid a work of internal improvement, and bonds were, as in this case, issued therefor by the county commissioners (*infra*, p. 238), — *Held*, that, to enforce payment, the holder of them must sue the county, and judgment, if rendered in his favor, will be in form against it, and be collected by a tax upon the taxable property of the precinct.

2. The courts of the United States cannot by *mandamus* compel the collection of a tax to pay such bonds until a judgment upon them shall be obtained. *County of Greene* v. *Daniel* (102 U. S. 187) cited on this point and approved.

ERROR to the Circuit Court of the United States for the District of Nebraska.

The facts are stated in the opinion of the court.

*Mr. W. H. Munger* and *Mr. E. Wakeley* for the plaintiff in error.

*Mr. William Marshall* for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

By a statute of Nebraska, passed in 1869, "to enable counties, cities, towns, and precincts to borrow money on their bonds, or to issue bonds to aid in the construction or completion of works of internal improvement in this State, and to legalize bonds already issued for such purposes," the legal voters of counties and cities were authorized to vote bonds for such purposes, and upon a favorable vote, the county commissioners in case of a county, and the city council in case of a city, were to issue the bonds as voted, which were to "continue a subsisting liability against said city or county" until paid. It was further made the duty of the proper officer annually to cause to be levied, collected, and paid over to the holders of such bonds "a special tax on all taxable property within said county or city, sufficient to pay" the interest and principal as they fell due.   Sects. 6 and 7 of the act are as follows: —

"SECT. 6. Any county or city which shall have issued its bonds in pursuance of this act, shall be estopped from pleading want of consideration therefor, and the proper officers of such county or

city may be compelled, by *mandamus* or otherwise, to levy the tax herein provided to pay the same.

"SECT. 7. Any precinct, in any organized county of this State, shall have the privilege of voting to aid works of internal improvement, and be entitled to all the privileges conferred upon counties and cities by the provisions of this act; and in such case the precinct election shall be governed in the same manner as is provided in this act, so far as the same is applicable, and the county commissioners shall issue special bonds for such precinct, and the tax to pay the same shall be levied upon the property within the bounds of such precinct. Such precinct bonds shall be the same as other bonds, but shall contain a statement showing the special nature of such bonds." General Statutes of Neb. 448.

Under the authority of sect. 2 bonds were issued by the county commissioners of Dodge County in the following form:

"UNITED STATES OF AMERICA, }
    STATE OF NEBRASKA. }

"It is hereby certified that Fremont precinct, in the county of Dodge, in the State of Nebraska, is indebted unto the bearer in the sum of one thousand dollars, payable on or before twenty years after date, with interest at the rate of ten per cent per annum from date. Interest payable annually on the presentation of the proper coupons hereto annexed. Principal payable at the office of the county treasurer, in Fremont, Dodge County, Nebraska; interest payable at the Ocean National Bank, in the city of New York.

"This bond is one of a series issued in pursuance of and in accordance with a vote of the electors of said Fremont precinct at a special election held on the 11th day of November, 1870, at which time the following proposition was submitted:—

"Shall the county commissioners of Dodge County, Nebraska, issue their special bonds on Fremont precinct, in said county, to the amount not to exceed fifty thousand dollars, to be expended and appropriated by the county commissioners, or as much thereof as is necessary, in building a wagon-bridge across the Platte River, in said precinct; said bonds to be made payable on or before twenty years after date, bearing interest at the rate of ten per cent per annum, payable annually? Which proposition was duly elected, adopted, and accepted by a majority of the electors of said precinct voting in favor of the proposition.

" And whereas the Smith Bridge Company, of Toledo, Ohio, have entered into a contract with said county commissioners to furnish the necessary materials, and to build and construct said bridge referred to in the foregoing proposition :

" Wherefore this bond, with others, is issued in pursuance thereof, as well as under the provision of an act of the legislature of the State of Nebraska, approved February 15th, 1869, entitled 'An Act to enable counties, cities, and precincts to borrow money on their bonds, to aid in the construction or completion of works of internal improvement in this State, and to legalize bonds already issued for such purpose.'

" In witness whereof we, the said county commissioners of said Dodge County, have hereunto set our hands, this first day of September, A. D. 1871.

" GEORGE F. BLANCHARD,

" A. C. BRIGGS,

" JOHN P. EATON,

" County Commissioners.

" Attest :

[SEAL.]    " A. G. BRUGH, County Clerk."

Default having been made in the payment of sundry coupons attached to these bonds, Davenport, the plaintiff in error, brought suit against the county for the recovery thereof, in the Circuit Court of the United States for the District of Nebraska. The petition set forth the issue of the bonds according to the facts, and prayed judgment " for the sum of eight hundred and fifty dollars and costs of suit, said judgment to be collected by a tax upon the taxable property within the territory comprising said Fremont precinct at the time said bonds were voted and issued." The county demurred to the petition, and at the hearing the following questions arose : —

" 1. Whether upon the allegations of the amended petition filed in said court on the twelfth day of May, 1881, the said county of Dodge is liable to a suit in which judgment can be rendered against said county of Dodge, on the bonds and coupons therein declared upon and set out.

" 2. Whether upon the allegations of the said petition the plaintiff is entitled to recover a judgment in form against the county of Dodge, to be satisfied or collected only by levy of

a tax on the taxable property in Fremont precinct, as prayed for in said petition."

Upon these questions the opinions of the circuit justice and district judge holding the court were opposed, and that disagreement has been duly certified here. The opinion of the circuit justice being that the questions should be answered in the negative, the demurrer was sustained and judgment given for the defendant. From that judgment this writ of error has been brought, and the case is now here for determination on the certificate of division.

When county bonds are issued under the statute in question, it is expressly provided that they shall constitute a debt against the county, to be paid by the levy and collection of taxes on all the taxable property within the county. If aid is voted by a precinct, bonds also are to be issued, differing only from county bonds in that they are to be paid from taxes levied on property within a precinct. "As to the several duties of the county commissioners respecting them," says the Supreme Court of Nebraska, in *State* v. *Thorne* (9 Neb. 458, 461), "the law makes no distinction whatever between precinct and county bonds. They must issue both, and when issued it is their duty to keep a record of the kinds and amounts, as well as the times and places of payment, and make provisions therefor, as the statute directs. In the case of precinct bonds the means of payment must be raised by a tax levied by the commissioners 'upon the property within the bounds of such precinct,' which must be collected in the same manner as is the ordinary county revenue, and through the agency of the county treasurer, whose only duty in connection with the fund arising therefrom, when collected, is to hold it subject to the order of the county commissioners directing its application to the object for which it was intended. As before stated, the management of this sort of precinct indebtedness is made to conform to that of counties of like character. The sole distinction is that it concerns a distinct portion only instead of the whole body of the county. The money with which to meet the obligations of a precinct is raised and paid out with the same formality, and through precisely the same agencies, as are the ordinary county funds, and, except when

there is some special provision of statute authorizing it, payment therefrom can be legally made only on ' warrants by the county commissioners according to law.' "

A bond implies an obligor bound to do what it is agreed shall be done. Precincts in Nebraska are but political subdivisions of a county. They have no corporate existence, and cannot contract or be contracted with. They have no corporate officers, and can neither sue nor be sued. Certain officers are elected by the voters of precincts for political, administrative, and judicial purposes, but they are in no sense the representatives of the people of the Territory as a municipality. *State v. Dodge County,* 10 Neb. 20. Precincts are governed by the county commissioners, the governing board of the county, and by the appropriate officers of the State. Their relation to a county is like that of a ward to a city. Having no corporate existence, no separate municipal authority, they cannot, says again the Supreme Court of the State, in the case last cited, " enter into contracts directly or indirectly, nor assume obligations which a court might be called on to enforce." Hence, the precinct cannot become the obligor of precinct bonds, and we think it follows that the county, which does have a corporate existence, and can contract and be contracted with, and upon whose officers is imposed the duty not only of issuing the bonds, but of providing for the payment of them, is the political entity bound by the obligation and charged with the debt created thereby. The only difference between the two kinds of debt is, that in one all the taxable property of the county is charged with its payment, and in the other only a part. In both the *mandamus* to enforce the levy and collection of the necessary taxes lies to the proper officers of the county alone. This remedy is expressly provided for, and thus the presumption that might otherwise arise of an intention to erect the precinct into a corporation for the purpose of these obligations, because, without it, the bonds could not be enforced, is rebutted. We think, therefore, that the special bonds which the county commissioners are to issue for the precincts are, in legal effect, the special bonds of the county payable out of a special fund to be raised in a special way. Although the form of expression in the Nebraska statute

is somewhat different from that in Missouri, which we were called on to consider in *County of Cass* v. *Johnston* (95 U. S. 360), we think the legal effect of it is the same. In Missouri it was provided that the bonds should be in the name of the county; but in Nebraska there can be no bond except it be of the county, and as a bond is to be made, it necessarily follows that the county must make it. In express terms it is stated that precinct bonds shall be the same as other bonds, that is to say, county bonds, but must contain a statement of their special nature, which confines the area of taxable property to a part rather than the whole of the county.

If there is nothing else in the case, therefore, we think it comes within *County of Cass* v. *Johnston* (*supra*), and that an action at law will lie in the courts of the United States against the county for the recovery of the special judgment asked for. *County Commissioners* v. *Chandler* (96 U. S. 205) was upon coupons attached to some of this same issue of bonds. Judgment had been rendered against the county in the court below, and that judgment was affirmed here. No one seemed to think then that the defence now relied on was good, for it was not mentioned in this court or below. The defence then made related only to the authority of a precinct to vote aid for the building of a toll-bridge.

It is contended, however, that as the statute which authorizes the creation of the liability provides a special remedy for its enforcement, this suit cannot be maintained. The remedy provided is by *mandamus* to compel the proper officers to levy the necessary tax. In *County of Greene* v. *Daniel* (102 U. S. 187), a case similar to this in many of its features, we said a suit to get judgment on bonds or coupons was part of the necessary machinery which the courts of the United States must use in enforcing this remedy, and that the jurisdiction of those courts is not to be ousted simply because in the courts of the State the *mandamus* could be granted without a judgment. In the State courts the liability may, as we understand the case of *State* v. *Dodge County* (*supra*), be determined in the proceedings for the *mandamus*. Such is not, however, the rule in the courts of the United States, where the writ of *mandamus* is only granted in aid of an existing jurisdiction. In those

courts the judgment at law is necessary to support the writ, which is in the nature of an execution to carry the judgment into effect. *County of Greene* v. *Daniel, supra ; Graham* v. *Norton,* 15 Wall. 427 ; *Bath County* v. *Amy,* 13 id. 244. As the judgment asked for is special, and will only entitle the plaintiff to payment through the instrumentality of the special tax to be levied, the suit as it now stands is in reality only a way of getting the remedy the statute provides. The only execution that can issue on the judgment will be the *mandamus.*

The Supreme Court of the State, in *State* v. *Dodge County.* (*supra*), declined to issue a *mandamus* for the levy of taxes to pay a judgment in the Circuit Court of the United States on some of the coupons attached to this class of bonds, and in the opinion declared the judgment a nullity ; but this we must understand to mean a nullity as the foundation of any proceedings in that court for its enforcement. To enable the courts of the United States to afford the remedy which the law has specially provided, such a judgment is a necessary preliminary. In fact, a judgment is but one of the steps in the proceeding to obtain the *mandamus.* The statute has given a remedy by *mandamus,* but has not undertaken to regulate the process by which it is to be secured. That depends on the practice established in the several tribunals from which it is to be obtained. The practice in the State courts requires one mode of proceeding, that in the courts of the United States another; but the result is the same in both, to wit, the order for the levy and collection of the requisite tax.

It follows that each of the questions certified must be answered in the affirmative.

*Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.*