## NEMAHA COUNTY *v.* FRANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF NEBRASKA.

Submitted December 20, 1886.—Decided January 17, 1887.

When the defendant in an action at law denies each and every allegation in
the declaration, and puts the plaintiff on his proof, it is not error to order
stricken from the answer special defences, which may be set up under
this general denial.

It has been settled by this court in *Davenport* v. *Dodge County*, 105 U. S. 237,
and *Blair* v. *Cuming County*, 111 U. S. 363, that coupons like those sued
on in this case are obligations of the county, and that an action may be
maintained against the county upon them.

THIS was an action at law against a county to enforce the
payment of coupons on bonds issued by the county. The
case is stated in the opinion of the court.

*Mr. John M. Thurston, Mr. J. S. Stull,* and *Mr. Walter J.
Lamb,* for plaintiff in error.

*Mr. J. M. Woolworth* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an action at law brought by Augustus Frank, a citi-
zen of the state of New York, for the purpose of enforcing
the payment of the interest coupons on certain municipal
bonds alleged to have been issued by the county of Nemaha,
on behalf of Brownville precinct in said county, to aid in the
construction of the Brownville, Fort Kearney and Pacific Rail-
road, in pursuance of an act of the legislature of the state of
Nebraska. The petition alleges, that, by virtue of an act en-
titled "An act to enable counties, cities, and precincts to bor-
row money on their bonds, or to issue bonds to aid in the
construction or completion of works of internal improvement
in this state, and to legalize bonds already issued for such pur-

poses," passed on the 15th day of February, 1869, the board of commissioners of the county of Nemaha issued the special bonds or written obligations of said Brownville precinct, on the 20th day of August, 1870, to aid in the construction of the Brownville, Fort Kearney and Pacific Railroad, and delivered the same to the company authorized to construct said road; that prior to the issue of said bonds the proposition to issue the same was duly submitted to the voters of said Brownville precinct, in strict accordance with the provisions of the said act of the legislature, and that a large majority voted for said proposition; that, during the years 1871 and 1872, the said Brownville precinct and the board of county commissioners duly paid the coupons then falling due by means of a tax levied for that purpose, but for the years 1878 and 1879 they have failed and refused to pay the same or to levy a tax therefor. The petition also alleges, that, on or about the 20th of February, 1871, for a valuable consideration, the bonds and coupons were transferred in good faith to John Fitzgerald, and by him to the plaintiff.

An answer was filed by Nemaha County, as defendant, containing the following matter:

"The total amount of the bonds so issued and sold, being one series, under one proposition, amounted to one hundred thousand dollars. The said bonds and coupons were voted upon the following contract and conditions and none other: At the time of the vote for said bonds certain persons were attempting to organize a railroad corporation under the name of the Brownville, Fort Kearney and Pacific Railroad Company, the identical same organization named in said bonds, with a capital stock of two million dollars, but were unable to organize it because unable to obtain a payment on said amount of stock of ten per cent. thereof, as required by law, precedent to the right to do business; they considered and treated said series of one hundred thousand in bonds as one one-hundred-thousand-dollar cash subscription all paid up in cash in advance, and, also, they treated and considered bonds of the city of Brownville, situated within the said precinct of Brownville mentioned in the petition, of the nominal sum of sixty thou-

sand dollars, as sixty thousand dollars cash subscription paid up in cash in advance, all as capital stock of said railroad company, aggregating one hundred and sixty thousand dollars, so considered and treated as cash capital stock paid in; but, by considering the said bonds of the nominal sum of $160,000 as one hundred and sixty thousand dollars in money paid in on the capital stock, there was still an insufficient amount paid in to enable the company to do business, there being no cash paid in except on a few private subscriptions, and not exceeding ten thousand dollars, so that even by treating said bonds as money there was still a deficiency of thirty thousand dollars of the amount prescribed by law as a condition precedent to the organization of the company for the purpose of transacting any of the business for which it was sought to be organized. Defendant, therefore, denies that said railroad company was ever a corporation with power to transact business or to receive municipal bonds for its aid.

"Defendant, therefore, avers that neither said precinct nor said county had any power or authority to aid in the organization of said railroad company by subscribing to its stock or in any other manner. Defendant further avers, that said pretended railroad company never either filed or recorded its articles of incorporation, if any it ever had, in any county in the state of Nebraska, as by law it was compelled to do prior to its existence as a corporation.

"In the transactions of issuing said bonds by defendant and of receiving the same by said pretended railroad company, neither the defendant nor the said company had any power to act, and all the acts therein on both sides are and ever have been *ultra vires* and null and void.

"The proposition submitted to the voters of said precinct as a basis of the right to issue said bonds was a proposition to subscribe by said precinct one hundred thousand dollars in stock and shares in the capital stock of said pretended railroad company, and pay the same in bonds aforesaid.

"The total assessed valuation of all the property in the said precinct, as shown by the last assessment preceding the issuing of said bonds, was $920,000, and the issue of $100,000 in bonds was in excess of the amount allowed by law."

The plaintiff having filed a reply, afterwards moved the court to strike out from the answer of the defendant all the foregoing matter as immaterial and irrelevant. This motion was sustained by the court, to which ruling the defendant excepted. Upon the pleadings as thus amended the cause was tried by a jury, who returned a verdict in favor of the plaintiff, on which judgment was rendered, to reverse which this writ of error has been sued out and prosecuted.

This ruling of the court in striking out this portion of the answer is alleged as error. For the purposes of the argument we shall assume what is claimed by the plaintiff in error, that the matter stricken out was material and relevant. The defences intended to be raised by it were, that in two particulars the bonds in question were void as not having been issued in conformity with law. The sections of the statute of 1869, in pursuance of which it is alleged they were issued, are as follows:

"SECTION 1. That any county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or any other work of internal improvement, to an amount to be determined by the county commissioners of such county or the city council of such city, not exceeding ten per centum of the assessed valuation of all taxable property in said county or city, *Provided* the county commissioners or city council shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, in the manner provided by chapter nine of the Revised Statutes of the state of Nebraska, for submitting to the people of a county the question of borrowing money."

"SECTION 7. Any precinct in any organized county of this state shall have the privilege of voting to aid works of internal improvement, and be entitled to all the privileges conferred upon counties and cities by the provisions of this act, and in such case the precinct election shall be governed in the same manner as is provided in this act, so far as the same is applicable, and the county commissioners shall issue special bonds for such precinct, and the tax to pay the same shall be levied upon the property within the bounds of such precinct. Such

precinct bonds shall be the same as other bonds, but shall contain a statement showing the special nature of such bonds."

The averments in that portion of the answer stricken out are in substance, 1st, that the bonds were illegal and void because not issued to a company authorized by the statute to receive them; and, 2d, that they were illegal and void because issued in excess of the amount of ten per centum of the assessed valuation of the taxable property in said precinct. The answer of the defendant, in addition to the matter stricken out, contains the following: "Defendant has no knowledge as to whether the plaintiff is a *bona fide* holder of said bonds, or any part thereof, or whether he purchased them before due or paid any value therefor, or purchased them at all, and, therefore, for the purpose of raising the issue and procuring the proof thereon by compulsory process, defendant denies the allegations of the petition on that subject, and also denies each and every allegation contained in said petition, except such as it has herein expressly admitted in this answer."

This clause in the answer remained and formed the issue which was tried. It is a general denial of each and every allegation of the petition, as no allegation of the petition was otherwise admitted in the answer. It therefore put the plaintiff upon proof of every fact necessary to constitute the cause of action set out in his petition, and embraced a denial of the legality and validity of the bonds, and the lawfulness of their issue and delivery. It required the plaintiff to show by competent proof that he was the owner of the coupons sued on, taken from bonds in fact executed by the defendant, issued in accordance with law, and delivered to a party competent to receive the title. It permitted proof on the part of the defendant of every fact which tended to establish that the bonds were illegal and void. It follows, therefore, that every defence which was open to the defendant under that portion of the answer stricken out was equally open to it under the answer as it stood at the trial. The plaintiff obtained no advantage, and the defendant suffered no detriment, by the ruling of the court requiring that portion of the answer to be stricken out. The action of the court in granting the motion

did not, therefore, prejudice the defendant. It does not appear from this record what took place at the trial. There is no bill of exceptions which shows what evidence, if any, the defendant offered, or whether any that he did offer was rejected. For aught that appears, the very matters which he might have offered in evidence, under that portion of the answer stricken out, were in fact offered and received under the pleadings as they stood at the time of the trial.

It seems also to be objected to the judgment rendered against the county of Nemaha that the coupons sued on are not the obligations of the county. It is said that the bonds are precinct bonds, issued by the county commissioners of the county, the duty to pay which rests upon the precinct alone; the mode of payment being by means of a tax to be levied by the county commissioners upon the property within the bounds of the precinct. It is, therefore, argued that no action will lie against the county in respect to these bonds and coupons, except in case of the refusal of the county commissioners to levy the tax when it ought to be levied, when a mandamus is the sole remedy, being the one prescribed by the statute. This question has been set at rest by the previous decisions of this court. *Davenport* v. *Dodge County*, 105 U. S. 237, and *Blair* v. *Cuming County*, 111 U. S. 363, are decisions upon the very point arising under the same statute.

There is, therefore, no error in the record, and

*The judgment is affirmed.*