## WOODS BROS. CONST. CO. Inc., v. YANKTON COUNTY, S. D.

Circuit Court of Appeals, Eighth Circuit.
August 6, 1927.

No. 7745.

1. **Drains ⬤═49—County cannot be compelled to pay for current retards constructed for drainage district by general assessment but only by assessment on lands benefited (Const. S. D. art. 21, § 6; Rev. Code S. D. 1919, §§ 8466–8470, 8473–8475, 8477–8491; §§ 8458–8465, 8471, 8472, 8476, as amended).**

In an action against a county for the construction of current retards for a drainage district located within the county, no judgment can be rendered against the county which it would be required to pay out of county funds by a general assessment on the property of the county; Const. S. D. art. 21, § 6, and Rev. Code S. D. 1919, §§ 8466–8470, 8473–8475, 8477–8491, and sections 8458–8465, 8471, 8472, 8476, as amended, negativing any idea that the work should be paid for other than by an assessment on the lands benefited.

2. **Mandamus ⬤═13—Plaintiff in federal court, held bound to secure judgment before it could obtain mandamus; mandamus issuing only in aid of judgment.**

In an action in federal court to recover judgment against a county for the construction of current retards for a drainage district and to secure mandamus against the county, plaintiff *held* bound to secure judgment against the county before it could obtain mandamus against it, since in federal court a writ of mandamus issues only to aid enforcement of judgment.

3. **Drains ⬤═49—One constructing current retards for drainage district is entitled to judgment against county payable by assessment upon lands in district, levy of which may be compelled by mandamus (Const. S. D. art. 21, § 6; Rev. Code S. D. 1919, §§ 8466–8470, 8473–8475, 8477–8491; §§ 8458–8465, 8471, 8472, 8476, as amended).**

Where petition is made to board of county commissioners for bank protection project, and district is formed and contract is made by board acting in behalf of district for construction of current retards, and work is done and additional retards are suggested, approved by board and constructed, and claim for construction of current retards is filed with board and rejected, contractor may secure judgment against county, payable by assessment upon the lands within

drainage district, and enforceable, if necessary, by mandamus to compel levy and collection of assessment by board of county commissioners under Const. S. D. art. 21, § 6, and Rev. Code S. D. 1919, §§ 8466–8470, 8473–8475, 8477–8491, and sections 8458–8465, 8471, 8472, 8476, as amended.

4. **Drains ⬤═49—Complaint against county for current retards held to sufficiently allege claim was presented and not paid (Rev. Code S. D. 1919, § 5898).**

In an action against a county for the construction of current retards for a drainage district located within county, complaint alleging that plaintiff presented bill and demanded payment and that board assess benefited lands, that board refused and rejected claim and attempted to cancel warrants issued therefor, *held* to sufficiently allege that plaintiff presented claim to board of county commissioners and that board failed to pay or to provide means for payment, under Rev. Code S. D. 1919, § 5898, requiring presentation of claim and failure to act thereon before institution of suit.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by the Woods Bros. Construction Company, Incorporated, against Yankton County, S. D., and the Board of County Commissioners of Yankton County, S. D. The County demurred to the complaint, a judgment of dismissal was rendered, and plaintiff brings error. Reversed and remanded, with directions.

John J. Hess, of Council Bluffs, Iowa, and E. E. Wagner, of Mitchell, S. D., for plaintiff in error.

Harold A. Doyle and Eldon W. Clark, both of Yankton, S. D., for defendant in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

JOHN B. SANBORN, District Judge. In November, 1925, Woods Bros. Construction Company, plaintiff in the court below, brought suit against Yankton county, S. D., and the board of county commissioners of Yankton county for a balance claimed to be due upon a contract for the construction of current retards in the Missouri river, seeking a judgment against the county, and its enforcement by mandamus. The county demurred to the complaint on the ground that it was not a proper party defendant, and that the complaint failed to state a cause of action against it. The demurrer was sustained and judgment of dismissal entered. The case is here upon writ of error.

It is unnecessary to detail all of the allegations of the complaint. It shows that in September, 1922, a petition was filed with the board of county commissioners for the establishment of a bank protection project for the construction of dikes, retards, and current controls in the channel of the Missouri river; that such proceedings were had that the board authorized the project designated "Missouri river bank protection district No. 1." A survey of the proposed improvement was made, as well as of the lands to be benefited. The cost was estimated, plans and specifications were prepared, the county auditor advertised for bids, as required by law, the bid of the plaintiff to build standard current retards at $50 per lineal foot was accepted, and the contract was entered into. The contract purports to be between "the Woods Bros. Construction Company, a Nebraska corporation of Lincoln, Neb.," and "the board of county commissioners of Yankton county, S. D., in behalf of the Missouri river protection district No. 1 of said county and state, a legally established drainage district, hereinafter called the board." Under the contract, the board employs the company, and the company undertakes to construct 600 lineal feet of standard current retards as a protective measure in the Missouri river, adjacent to the land within said district, in accordance with plans and specifications. The company agrees to make the necessary surveys and plans to meet the requirements of the United States government and the state of South Dakota, to furnish all necessary labor, material, and equipment, to hold "said board and said district" free and harmless from all liability because of the construction, to keep itself insured against liability under the Workmen's Compensation Law, to furnish a bond with surety approved by the board in an amount equal to 50 per cent. of the contract price for the faithful performance of the contract. In consideration of the agreements of the company, the "district agrees to pay said company, for the construction work hereinbefore mentioned, the sum of $50 per lineal foot of retard; payment to be made on or before the 5th day of each month for all work completed during the preceding month on the written estimate of the engineer for the board. The company agrees that, if the board so desires, it will accept the negotiable, legally issued 6 per cent. bonds of the district when registered and approved, as is by law required, in payment of the work herein contracted for." The contract was signed October 10, 1922: "Woods Bros. Construction Company, the Company, By Bert Falkner, General Manager. Board of County Commissioners, Yankton, South Dakota. County Auditor Jesse D. McCoun, by W. Schaller, Chairman."

On June 19, 1923, the project engineer certified to the county auditor that the plaintiff had done 70 per cent. of the total work and was entitled to $17,500, less 25 per cent. "retained as per specifications"; the total amount being $13,125. On June 26, 1923, the board allowed the estimate and paid it by issuing five warrants, payable out of moneys in the bank protection district fund. The warrants were drawn by the auditor of Yankton county, S. D., upon the county treasurer of Yankton county, S. D., and were signed by the auditor and the chairman of the board of county commissioners. The entire contract was performed by the plaintiff in accordance with its terms and the instructions and directions of the project engineer, and 500 lineal feet of current retards constructed at $50 per foot, or $25,000. After the work was completed, some objections were made by the board with reference to payment. About April 3, 1924, the project engineer submitted to the plaintiff and the board the proposition of building 325 feet more of current retards. The proposition was adopted by the board, and the plaintiff did the work. The project engineer, in June 1924, certified that the additional retards had been constructed and that altogether the plaintiff was entitled to compensation for 494 feet of retards at $50 per foot, or $24,700. This was in addition to the work already certified. The plaintiff presented its bill and demanded payment and that the board assess the benefited lands within the district, but the board refused to take such action, and on August 21, 1925, rejected the claim of the plaintiff and attempted to cancel the warrants already issued, and the plaintiff has received nothing for its work except the warrants.

The only question in the case is whether the facts pleaded constitute a cause of action against Yankton county.

Article 21, § 6, of the Constitution of South Dakota, provides:

"The drainage of agricultural lands is hereby declared to be a public purpose and the Legislature may provide therefor, and may provide for the organization of drainage districts for the drainage of lands for any public use, and may vest the corporate authorities thereof, and the corporate au-

thorities of counties, townships and municipalities, with power to construct levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this state, by special assessments upon the property benefited thereby, according to benefits received."

By virtue of this constitutional provision, the Legislature of South Dakota enacted certain drainage laws, which are sections 8458–8491, Rev. Code of 1919, with subsequent amendments. Considering these laws, as amended:

Section 8458 (as amended by Laws 1921, c. 193) authorizes the board of county commissioners to establish and cause to be constructed · levees, dikes, barriers, retards, drains, and ditches.

Section 8459 (as amended by Laws 1921, c. 197, § 1) provides that the board shall act only upon a written petition signed by one or more owners of land likely to be affected by the proposed drainage, and provides for the giving of a bond in connection with the making · of such petition, approved by the county auditor, and "conditioned to pay all expenses incurred in case the board does not grant the petition or the same is denied on appeal." It also provides:

"All claims for compensation or expenses of publishing legal notices, inspecting the proposed route, the payment of engineers and attorney's fees and other expenses incurred prior to the establishment of the drainage shall be paid from the general fund of the county, and for all such payments the county treasurer shall reimburse the general fund from the assessments herein provided for, if the drainage shall be established and assessments made therefor; if the petition for the establishment of such drainage shall be denied, then the petitioners shall reimburse the county for the expenses of the preliminary investigation and shall be liable therefor in an action upon the bond provided for in this section."

Section 8460 (as amended by Laws 1921, c. 194, § 1) provides that the county auditor shall transmit a copy of the petition to the state engineer, who, with the board of county commissioners, shall inspect "the proposed route" and may cause a survey of it by such engineer as the board may select, to be under the supervision of the state engineer; the survey to show all the detail of the project and the land to be benefited; the county auditor to furnish the state engineer with a copy of the engineer's report; the state engineer to render such assistance and advice to the board of county commissioners as he can,

being reimbursed for his expenses by the county board.

Section 8461 (as amended by Laws 1921, c. 194, § 2) provides for a hearing on the engineer's report, on notice to all who are interested.

Section 8462 (as amended by Laws 1921, c. 194, § 3) provides for the granting of the petition by the county board and the award of damages by it, and provides: "When damages are awarded to any person, persons or corporation, the board of commissioners shall order the same paid with drainage warrants or certificates," to be "issued and delivered before the actual taking possession of the land for which the damages are awarded. Such drain shall be given a name and the proceedings thereafter shall be recorded and indexed in a book kept for that purpose in the auditor's office."

Section 8463 (as amended by Laws 1921, c. 194, § 4) relates to the equalizing of benefits by the county board.

Section 8464 (as amended by Laws Sp. Sess. 1920, c. 46) relates to the levying of the assessments by the board upon the benefited lands to pay the damages and total cost of work and the expenses which "shall include the costs of the services of the board of county commissioners," etc. Assessments are to be collected by the county treasurer and paid over to holders of assessment certificates or upon order of the county commissioners. The board is authorized to issue and sell assessment certificates and to contract to pay for the construction of the drainage with certificates. Assessments are to be enforced by the county treasurer by sale of property at annual tax sale. Instead of making assessments for the purpose of paying the damages and costs, the board may issue and sell warrants payable "only out of the assessments to be subsequently made."

Section 8465 (as amended by Laws 1921, c. 194, § 5) relates to the letting of contracts for the work to the lowest responsible bidder, which shall give a bond to the board of county commissioners conditioned for the faithful performance of his work and the completion of the contract to the satisfaction of the board. The plans and specifications are to be filed with the county auditor. If, in the judgment of the board of county commissioners, the project, or any part, can be constructed for less money than the amount of the bid submitted, they may do the work themselves.

Section 8466 relates to the power of the board to extend the time for the completion of the contract.

Section 8467 relates to assessment of further costs and expenses of construction by the county board.

Section 8468 deals with the final acceptance of the work by the board, and contains this provision: "All claims for compensation or expenses for publishing legal notices or supervising the construction of any such drainage project, including the per diem and mileage of the county commissioners, shall be paid from the general fund of the county, and for all such payments the county treasurer shall reimburse the general fund from the assessments herein provided for."

Section 8469 relates to appeals from final orders of the county board.

Section 8471 (as amended by Laws Sp. Sess. 1920, c. 46, and Laws 1921, c. 195) relates to the payment of assessments in installments to the county treasurer.

Section 8472 (as amended by Laws Sp. Sess. 1920, c. 46, and Laws 1921, c. 196, § 1) deals with the issuance of bonds by the board "to be paid out of the funds to be obtained as hereinbefore provided in this chapter; and such bonds shall be a charge upon the lands in the particular district," and contains this provision: "No county shall be liable for the payment of any bonds issued under this article, but such bonds shall be paid out of the funds derived from the assessments provided for in this chapter."

Section 8474, section 8476 (as amended by Laws 1921, c. 194, § 7) and section 8477 relate to the general powers of the board over drains, and provide for their repair by assessment on the benefited land.

Section 8478 authorizes the board to make rules and regulations on the subject of drainage.

Section 8485 provides for the compensation of the board and the county auditor for services performed by them in connection with drainage projects, and reads as follows: "The county commissioners shall receive for their services four dollars per day for the time actually spent by them in the performance of the duties of their offices under this chapter, publishers of newspapers shall receive for publishing legal notices the same fees as are allowed by law for publishing proceedings of the county commissioners; but the proceedings of the board of county commissioners when acting in any drainage matter under this article shall not be published as a part of its regular proceedings or at all. The county auditor shall charge a reasonable amount, to be fixed by the board, for services, to be paid into the general fund of the county."

In Tuthill Lumber Co. v. McMackin, 31 S. D. 507, 141 N. W. 382, which was decided May 10, 1913, by the Supreme Court of South Dakota, the question for determination was whether the lumber company was entitled to a mechanic's lien. In order to settle that question, the court had to determine whether drainage work was county work or was the work of the members of the board of county commissioners. The court said (page 383 [31 S. D. 511]):

"Such work is made public work by the amendment to the state Constitution adopted in 1906, viz. section 6, art. 21. Before the adoption of this section, drainage work, which was conducive to the public health, convenience, and welfare, was by its very nature public work. One effect of the amendment was to make the drainage of agricultural lands public work. By such amendment the Legislature may provide for the organization of drainage districts and may vest the corporate authorities thereof with drainage powers. It is clear that in such case the acts of the corporate authorities would be the acts of the drainage district.

"The Legislature may dispense with the organization of drainage districts and vest the corporate authorities of counties, townships, and municipalities with such powers. It would seem equally clear that in such cases the acts of the corporate authorities would be the acts of the county, township, or municipality. The Legislature chose the second alternative and vested such powers in boards of county commissioners. A careful study of the present drainage laws convinces us that under such laws the county is the legal entity, and that in doing such work the county commissioners are engaged in county work [citing cases]. Therefore funds accruing in drainage matters are funds which are in the control of the county."

The drainage laws were next considered by that court in Renville State Bank v. Kinsberg, 40 S. D. 191, 166 N. W. 643, decided March 8, 1918. The action was in mandamus to compel the county officers of Sanborn county to certify a money assessment of benefits in relation to a drainage district, based upon unpaid warrants issued by the county auditor and chairman of the county board, payable out of unappropriated funds belonging to ditch fund No. 21. The court considered the question as to whether mandamus was an appropriate remedy, and in that connection said (page 644 [40 S. D. 197]):

"It is also contended by appellants in this connection that the rights of the parties to this action should have been determined by

a judgment of the court in an ordinary action and not in the first instance by mandamus. We are of the view that this contention is not tenable. As must be observed by a reading of chapter 134, Laws of 1907, as amended by chapter 102, Laws of 1909, the only method provided for the creation of a fund for the payment of such warrants is a money assessment for benefits certified by the board of county commissioners for collection to the county treasurer. Under this situation of affairs we are of the view that mandamus to compel such action on the part of the county board is an appropriate remedy. No judgment could be obtained against the county, as the county is not a party at all to such drainage procedure. No suit for money judgment could be maintained against the board of county commissioners or the individual members thereof, as they were acting merely in an official capacity. Neither could any action be maintained against the county treasurer to pay such warrants without a special fund first having been created for that purpose."

In the case of Davison County et al. v. Watertown Tile & Construction Co., 47 S. D. 101, 196 N. W. 96, decided December 8, 1923, this situation was presented: The construction company had given a bond to insure the faithful performance of a drainage contract, pursuant to the provisions of section 8465, Revised Code South Dakota 1919. The county was the obligee named in the bond. The county and the county commissioners brought suit upon it. The surety demurred to the complaint on the ground that it did not state a cause of action and upon the further ground that several causes of action were improperly united. The demurrer was overruled. The point of the surety was that five persons designating themselves as county commissioners had joined as plaintiffs with Davison county to recover damages on such bond. In discussing who the proper obligee in such bond was, the court said:

"By article 21, § 6, of the Constitution, the Legislature was empowered to provide for either of two methods in authorizing drainage work. It might provide for incorporated drainage districts and vest the corporate authorities thereof with the necessary power, or it might dispense with the incorporation of drainage districts and vest the necessary power in the corporate authorities of counties, townships, or municipal corporations. In preparing for what the Code calls 'intrastate drainage' (sections 8458–8491, Rev. Code 1919), the Legislature chose

the latter method, and vested the necessary power in the corporate authorities of counties, to wit, the boards of county commissioners. Under this law the county is the legal entity in the performance of the work, and such work is county work. Funds accruing in drainage matters are funds which are in the control of the county. John W. Tuthill Lbr. Co. v. McMackin, 31 S. D. 507, 141 N. W. 382. It would follow, therefore, as a matter of course, that a bond given to secure the performance of a drainage contract under section 8465, Rev. Code 1919, is under the control of the county through its board of county commissioners. The members of such board were properly made parties plaintiff, because, by reason of the statute, they, in their official capacity, are charged with the conduct of the affairs of the unincorporated drainage district. Said section 8465 does not say who the obligee of the bond shall be. If the board of county commissioners of Davison county had been named as the obligee, then perhaps the county would not have been a necessary party plaintiff, but even then it would have been a proper party plaintiff."

The Supreme Court of South Dakota has therefore held, in the first case referred to, that the drainage work performed by the county commissioners is county work to the extent of permitting a right to a lien, and, in the last case, to such an extent as to permit the county to recover upon a bond given to it for the faithful performance of drainage work. The statement that no judgment could be obtained against the county, as the county is not a party at all to drainage procedure, appears in Renville State Bank v. Kinsberg, supra. That case does not refer in any way to the first decision, nor does the last decision refer to it. The court did not discuss any of the cases in which it has been held that judgment may be rendered against a county upon an obligation entered into on behalf of a political subdivision, to be paid out of a special fund.

The lower court, in this case, was of the opinion that a judgment could not be rendered against the county of Yankton under the facts disclosed by the complaint.

[1] No judgment could be entered against Yankton county which it would be required to pay out of county funds by a general assessment upon the property of the county, and the trial judge is clearly correct in his position in that regard. The constitutional provisions and the statutes to which reference is made all negative any idea that the drainage work should be paid for in any other way

than by an assessment upon the lands benefited.

[2] The real question, however, is whether the county of Yankton is sufficiently a party to or obligated by this contract so that the plaintiff can procure a judgment against it payable out of an assessment to be levied upon the benefited lands, in the manner provided by law, and thereby secure a writ of mandamus to require the board of county commissioners to levy and collect the assessment. If it cannot recover a judgment against the county, then it has no remedy in the federal court, because a writ of mandamus in the federal court is issued only in aid of the enforcement of a judgment.

[3] What is thought to be, perhaps, the earliest federal case involving the question here presented is Jordan v. Cass County, 3 Dill. 185, 13 Fed. Cas., page 1086. The opinion was written by Judge Dillon. Suits were brought on bonds issued by the county court of Cass county, Mo., in the name of the county and on behalf of a township. The question was whether the holder of the bonds could maintain an action against the county. It was claimed that the remedy of the bondholder was by an action against the township or against the taxpayers and residents of the township, in whose behalf the bonds were issued. The court held that the Legislature undoubtedly intended that there should be a remedy on these bonds; that a personal liability on the part of the inhabitants of the township for debts of a public, municipal, or quasi corporation is not recognized to exist, and could not be enforced without contravening the method prescribed by the act for acquiring the means of making payment thereof, which was a special tax to be levied by the county court on all the real estate within the township; that it is clear that the bondholder might resort to the state tribunals for a writ of mandamus, but that the federal court has no original jurisdiction in mandamus, and that the holder of the bonds is without remedy in the federal court unless entitled to recover a judgment and to enforce it, if necessary, by mandamus; that this results, not from any intrinsic difference between the state and federal courts, but from the peculiar language of the judiciary act; that such an action will lie and will best carry out the design of the Legislature, and that the theory of the act was to use the county and the officers of the county to effect its purposes. The court said (page 1089):

"The right of the nonresident citizen to resort to the courts of the United States is one which is given by the Constitution and laws, and it is a right which a citizen would be apt to regard as specially desirable, where if he be compelled to resort to the state courts it must be to a county whose citizens in whole or in part are his real adversaries, and who may constitute the jury to decide the case. This right, so valuable to a plaintiff, but which deprives the defendant of no just advantage, since the federal courts are by their Constitution to stand wholly indifferent between all parties, ought not to be considered as unavailable to a nonresident citizen unless a fair construction of the enactments applicable to the question so requires.

"It is in our judgment practicable consistently with established legal principles to protect the constitutional rights of the counties, and at the same time to recognize the constitutional right of the nonresident citizen to come with these securities into court to have his rights in respect to them determined. This is to be effected by the nature of the judgment we render, which is not a personal judgment against the county, but only a judgment judicially establishing the plaintiff's debt if no defense shall be successfully made. If the debt shall be thus established, we must suppose that the proper county court will levy and collect from the property within the township the necessary tax to pay the debt, but, if it should not, this court has the power, and in that event it would become its duty, by mandamus, to cause such tax to be levied and collected."

That case is distinguishable in principle from this case, if at all, only because of the fact that the bonds were authorized to be issued and were issued in the name of the county, but the court points out that, under the state Constitution, the county could not be in any way obligated upon the bonds.

In County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416, suit was brought on a similar bond issued by the same county "for and on account of a township." The bond was issued in the name of the county, but it was payable only by the township. It was argued that a suit against the county would not lie. The court said (page 370):

"Without undertaking to decide what would be the appropriate form of proceeding to enforce the obligation in the state courts, it is sufficient to say that in the courts of the United States we are entirely satisfied with the conclusions reached by the court below, and that a judgment may be rendered against the county, to be enforced, if necessary, by mandamus against the county court or the judges thereof, to compel the levy and col-

lection of a tax in accordance with the provisions of the law under which the bonds were issued. The reasoning of the learned circuit judge in Jordan v. Cass County, 3 Dill. 185 [Fed. Cas. No. 7517], is to our minds perfectly conclusive upon this subject, and we content ourselves with a simple reference to that case as authority upon this point."

The case of Davenport v. County of Dodge, 105 U. S. 237, 26 L. Ed. 1018, was also a suit upon a bond issued on behalf of a precinct, not in the name of the county, and signed by three county commissioners of Dodge county. The law under which it was issued provided that precincts might issue bonds for internal improvements "and the county commissioners shall issue special bonds for such precinct, and the tax to pay the same shall be levied upon the property within the bounds of such precinct." The bond was not referred to as a county bond; neither the law under which it was issued nor the bond itself purported to obligate the county. The court, after pointing out that a bond implies an obligor bound to do what it is agreed shall be done, and that a precinct is not a legal entity, and that it follows that the county, which does have power to contract and to sue and be sued, is bound by the obligation, says (page 241):

"We think, therefore, that the special bonds which the county commissioners are to issue for the precincts are, in legal effect, the special bonds of the county payable out of a special fund to be raised in a special way."

It is then stated that in the United States courts mandamus is in the nature of an execution to carry a judgment into effect, and that a judgment at law is necessary to support the writ, and that (page 243):

"As the judgment asked for is special, and will only entitle the plaintiff to payment through the instrumentality of the special tax to be levied, the suit as it now stands is in reality only a way of getting the remedy the statute provides [mandamus]. The only execution that can issue on the judgment will be the mandamus."

In Blair v. Cuming County, 111 U. S. 363, 4 S. Ct. 449, 28 L. Ed. 457, the facts were that the county commissioners had issued bonds on behalf of a precinct in aid of a gristmill. The law authorizing the bonds said nothing about their being in the name of the county, but that the county commissioners were to issue them on behalf of the precinct, to be paid by the precinct. The bonds themselves did not purport to bind the county.

The complaint was demurred to and the demurrer sustained. The court held, on the authority of Davenport v. County of Dodge, supra, that a judgment could be obtained against the county, payable in the manner provided by the law authorizing the bonds. The same question arose and was similarly decided in Nemaha County v. Frank, 120 U. S. 41, 7 S. Ct. 395, 30 L. Ed. 584.

Aylesworth v. Gratiot County (C. C.) 43 F. 350, was a suit upon orders issued for work done and materials furnished in the construction of two drains in the defendant county, pursuant to an act of the state of Michigan. They were signed by the drain commissioner of the county and countersigned by the chairman of the board of supervisors, and directed to the county treasurer. The court held that the orders created no obligation against the county, and that no action would lie against the county upon these obligations as for a debt chargeable against it, and that the proper remedy in the state courts would be by writ of mandamus to compel the assessment and collection of the tax by the officers charged with that duty. After reviewing the law authorizing the issuance of the bonds—which was in many respects, apparently, similar to the act in question here, and which obviously obligated the county in no way to pay them—the court said (page 354):

"It is evident that under this act most ample powers are conferred on the board of supervisors with regard to the assessment and collection of these taxes, and, in case of any dereliction of duties on their part, there ought to be a remedy against the corporation, of which they are the authorized expression and agent. As before observed, the proper remedy in the state court is by writ of mandamus. As this court is incompetent, in the first instance, to afford this relief, we think an action may be brought against the county, and the collection of the judgment enforced by the same process of mandamus that would be resorted to if the proceedings had been instituted in the state court."

The opinion was by Judge Brown of Michigan. A motion for a new trial was made before the Circuit and District Judges, and was denied.

In the case of Breckinridge County v. McCracken (C. C. A.) 61 F. 191, which was a suit upon precinct bonds issued by the county for certain unincorporated precincts, pursuant to an act of the state of Kentucky which provided that, where a precinct had authorized the issuance of the bonds, it was the duty of the county judge and clerk to

deliver the bonds of such precinct in every respect as if the subscription had been made by the county; except that the bonds should show on their face the precinct or precincts for which they were issued, and such precincts should alone be bound to pay the bonds and their interest. The court held that judgment was properly rendered against the county, collectible only from taxes levied on property in the indebted district, and cited Davenport v. County of Dodge, supra.

The exact question, so far as principle is concerned, was decided by this court in the case of Clapp v. Otoe County, Neb. (C. C. A.) 104 F. 473. The opinion is by Judge Walter H. Sanborn. It appears that, under the laws of Nebraska, each board of county commissioners was authorized to divide the county into convenient precincts, and that any precinct organized according to law was authorized to issue bonds in aid of works of internal improvement upon a favorable vote of its electors. The law provided that the election should be called upon a petition of not less than fifty freeholders of the precinct to the county commissioners; that bond should be given, to be approved by the county commissioners, for the payment of the expenses of the election if the proposition was defeated; that, if two-thirds of the votes cast were in favor of the proposition, the county commissioners should issue the bonds to be signed by the chairman of the board of county commissioners and attested by the county clerk, and that the county commissioners should each year levy upon the taxpayers' property in the precinct a tax sufficient to pay the interest and 5 per cent. of the principal sum. A suit was brought on such bonds against the defendant county. Upon the question of the obligation of the county, the court said (page 479):

"Now, there can be no obligation without an obligor; no contract without a contractor. A precinct cannot contract and cannot be an obligor, because it is not a corporate entity. The favorable vote of its electors authorizes the precinct to do nothing. It can neither act nor contract, sue nor be sued. But, when its electors vote favorably upon a proposition to issue bonds, the statutes of Nebraska authorize the board of county commissioners of the county in which the precinct is situated to issue these bonds, to levy the necessary taxes upon the property in the precinct to raise money to pay them, and to apply this money to that purpose. Who, then, becomes the obligor in these bonds? Who makes the contracts? Who agrees to pay them? There can be but one answer to these questions, and

that is that the county which issues them, and which, under the statute, has the power to levy the taxes to raise the money to discharge them, agrees to pay them. The conclusion is irresistible that bonds issued by the county commissioners of a county in Nebraska, upon the favorable vote of the electors of a precinct therein, are the obligations of the county. In legal effect, they are the contracts of the county that it will pay the bonds, and the only difference between such bonds and the ordinary bonds of a county is not in the obligation of the county to pay them, but in the method by which the county may raise the money to discharge its own obligations. In the former case, it may levy the taxes upon the property in the precinct which voted for their issue; in the latter case, upon all the property in the county. But the obligation of the county to pay them is as sacred and effective in the one case as in the other"— citing Davenport v. Dodge County, supra; Nemaha County v. Frank, supra; Blair v. Cuming County, supra; State ex rel. Chandler v. Dodge County, 10 Neb. 20, 4 N. W. 370.

In the cases of Bates v. Wills, 190 F. 522, and Bates v. Wills, 269 F. 735 (this court), substantially the same situation was present which is before us, except that in those cases the drainage law of Missouri provided that the contract should be made "in behalf of the county," but there was no obligation on the part of the county to pay the contractor out of its funds.

There are two federal cases which, on first reading, appear to support the views of the defendant and the trial court. They are Meath v. Phillips County, 108 U. S. 553, 2 S. Ct. 869, 27 L. Ed. 819, and Liebman v. City and County of San Francisco (C. C.) 24 F. 705. The former presented the question of the liability of a county to pay drafts drawn on the levee treasurer under authority of a state statute "to provide for making and repairing levees in Desha and Phillips counties." The statute provided for levee districts for the purpose of reclaiming lands and for the taxation of such lands to pay the cost. The business was to be managed by levee inspectors at first appointed by the county court and afterwards elected. Payments were to be made by drafts of the levee inspectors upon a levee treasurer. The county court was to levy the tax to be collected like other taxes, paid over to the levee treasurer, and disbursed by him. The Supreme Court held that the debt was the debt of the levee district and not of the county; that the county court, in levying the tax, acted, not as the representative of the county, but of the levee

district; that the case differed from County of Cass v. Johnston, supra, and Davenport v. County of Dodge, supra, because, "in the case of the county of Cass, the law provided in terms for an issue of bonds in the name of the county, and in that of the county of Davenport we construed the law to be in effect the same. Conseqeuntly there were in those cases obligations of the counties payable out of special funds." In other words, the court held that, under the statute in question, the county as such was in no way involved. In Liebman v. City and County of San Francisco, the action was against the city and county to compel payment of interest on bonds under an act of the California Legislature—the object of which was to open a public street in the city of San Francisco—which itself described the land to be taken, provided for the assessment of damages upon benefited lands by a board of public works created for that purpose, which was to consist of officers of the city and county, and further provided that the bonds were not to be the bonds of the city and county, but were to be signed by the board and attested by its seal, that the city and county were not to be liable for their payment, and that purchasers accepted them upon that understanding. The court said of the board created under the statute: "This board is a special board of public works created by the statute, without any reference to the powers and duties of the corporation to carry out this particular improvement undertaken by the state, without reference to or any action of the corporation, and without consulting its pleasure"—and held that the board was independent of the city and county and was an agent of the state. An analysis of these cases shows that the statutes considered could not be construed as creating any obligation of the municipality to pay either out of a special fund or at all. The same distinction was made by Judge Gilbert in Mather v. City and County of San Francisco (C. C. A.) 115 F. 37.

We are satisfied that the county is involved in drainage proceedings under the laws of the state of South Dakota, and in this conclusion we are borne out by two decisions of the Supreme Court of that state, before referred to, one holding that the work was county work to such an extent as to permit a materialman to have a lien, and the other that a county is the proper obligee on a bond given for the faithful performance of the work. We think that that court was correct in the case of Renville State Bank v. Kinsberg to the extent that no judgment could be had against the county which it would be required to pay out of a general tax upon all the property of the county, and that that is the question which the court had in mind and the only question which it was required to pass upon in that case. The principles of law laid down in the cases of Jordan v. Cass County, supra, County of Cass v. Johnston, supra, Davenport v. County of Dodge, supra, Blair v. Cuming County, supra, Nemaha County v. Frank, supra, Aylesworth v. Gratiot County, supra, Clapp v. Otoe County, supra, and Bates v. Wills, supra, are applicable to this case. We reach the conclusion, therefore, that Yankton county is a proper party to this action; that the complaint states a cause of action against it, to which it may make defense; that, if the plaintiff shall be found entitled to recover, it may have judgment against the county for the amount due it, payable only out of a special fund to be raised by an assessment levied upon the lands in the drainage district in accordance with the statutes of South Dakota, to be enforced, if necessary, by mandamus against the board of county commissioners to compel it to levy and collect the assessment, and not otherwise.

[4] It is also urged at this time, although the question apparently was not presented to the court below, that the complaint is demurrable because it does not show upon its face that a claim was filed with the board of county commissioners, and rejected by it, in accordance with section 5898 of the Revised Code of 1919, which provides:

"No suit shall be instituted against any county to enforce the collection of a claim against it, unless such claim shall have been duly presented to and acted upon by the board of county commissioners; provided, that in case such board, having had such claim before it at a regular meeting, shall have failed and neglected to act upon such claim, it shall then be lawful for the owner of such claim, or his legal representatives, to bring suit in any competent court to enforce the collection of such claim, and provided, further, that this section shall not apply to cases where purely equitable relief is sought."

We think that the complaint sufficiently alleges that the plaintiff presented its claim to the board of county commissioners, and that the board failed and neglected to pay or to provide means for paying it. If the plaintiff has not complied with the law relative to the presentation of the claim to the county board, that matter can be set up in the answer and litigated upon the trial.

Let the judgment be reversed and the case be remanded, with directions to the trial court

to enter an order overruling the demurrer to the complaint and granting to the defendant county leave to answer.